F. W. DODGE COMPANY *vs.* CONSTRUCTION INFORMATION COMPANY & others.

Suffolk.    January 27, 1903. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction*, To protect compiled early information.  *Property*.

Early information in regard to the erection of buildings and the construction of public works requiring contracts for work and supplies, procured and compiled by the plaintiff as a business, for the purpose of furnishing it daily in confidence to the plaintiff's subscribers, is property which will be protected in equity, and a defendant will be restrained from conducting a rival business of the same character at cheaper rates by purchasing from the plaintiff's subscribers the reports which they have agreed not to divulge.

The daily furnishing of early information by a corporation formed for the purpose, to its subscribers, orally, in writing or in print, in regard to the erection of buildings and the construction of public works requiring contracts for work or supplies, under contracts binding each subscriber to use the reports in strict confidence and for his business only, is not a publication of the information which dedicates it to the public and deprives the corporation of the right to control its use.

BILL IN EQUITY, filed October 1, 1902, to restrain the first named defendant from obtaining from the plaintiff's subscribers information procured and compiled by the plaintiff at great expense and confidentially imparted by the plaintiff to its subscribers under contracts binding them not to divulge it, and to restrain the other defendants from paying to the first named defendant any sums of money for information thus wrongfully obtained.

In the Superior Court the case was heard by *Fox*, J., upon general and special demurrers of the first named defendant. The judge overruled the demurrers, and, being of opinion that the interlocutory decree overruling the general demurrer so affected the merits of the controversy that the matter ought to be determined by this court before further proceedings, reported the case for such determination.

*J. R. Dunbar*, (*W. Odlin* with him,) for the plaintiff.

*C. F. Choate, Jr. & E. C. Stone*, for the first named defendant.

KNOWLTON, C. J.   This case comes before us on demurrers to the plaintiff's bill.   The plaintiff corporation has been en-

gaged for some years in the business of collecting information in regard to the erection of buildings both public and private, the construction of sewers, water works, and other undertakings of public utility, as soon after they are contemplated as possible. This information is carefully compiled and distributed each day to the plaintiff's customers in accordance with their contracts, enabling them very early to take such steps as may seem to them best to obtain contracts to do the work or to furnish supplies.   The plaintiff, at great expense, has many servants and agents employed in the collection, preparation and distribution of this information, which it sells to its subscribers under a contract in writing whereby the subscriber binds himself to use the reports in strict confidence and for his business only.   The formal contract with subscribers, annexed to the bill, which is in blank, with large spaces for writing in special arrangements, shows that the information may be printed, written or oral, and implies that the information furnished to the subscribers is such as pertains to their different kinds of business, so that different subscribers receive information in detail on different subjects, according to their interests.   It also contains an agreement to be signed by each subscriber, to hold the information in strict confidence and for his business only.

The plaintiff avers that the defendant corporation is engaged in the same kind of business as the plaintiff, and that it has obtained unlawfully and dishonestly, from the plaintiff's subscribers, information furnished them by the plaintiff under these contracts, being aware of the terms of the contracts between the plaintiff and its subscribers, and that it is purchasing these reports from these subscribers for cash, and is furnishing them to its subscribers daily, and is informing the plaintiff's subscribers that by subscribing for the reports of the defendant they will obtain the advantages of the plaintiff's reports for a less price than the plaintiff charges for them.   The plaintiff says that the defendant has thereby prevailed upon many of the plaintiff's subscribers to cease buying the plaintiff's reports, and has caused the plaintiff great loss and damage.   The prayer of the bill is for an injunction and an account.

The important question in this case may be divided into two parts : First, has the plaintiff any property in the information

after it has been obtained at great expense and compiled for the use of its subscribers? Second, does it lose its property by publication, abandonment, or dedication to the public, when it furnishes the information to subscribers under these contracts? The facts, before it has ascertained them, unless they are held for a special purpose confidentially and as secrets, are not property ; but when these facts have been discovered promptly by effort and at expense, and have been compiled and put in form, and are of commercial value by reason of the speedy use that can be made of them before they have obtained general publicity, they are property. They represent expensive effort and valuable service, and, in the form in which they are presented to subscribers, they may be used with a reasonable expectation of profit from the early possession of them. The information is not visible, tangible property, but there is a valuable right of property in it which the courts ought to protect, in every reasonable way, against those seeking to obtain it from the owner without right, to his damage. What the plaintiff has when the defendant seeks to obtain it from him is the possession of valuable information. This early possession is valuable in itself. The plaintiff has it and the defendant does not have it. If the defendant can obtain it legitimately he becomes the owner of the same kind of property, and the two may become competitors in the market as vendors to those who are willing to pay for it. But if the defendant, surreptitiously and against the plaintiff's will, takes from the plaintiff and appropriates the form of expression which is the symbol of the plaintiff's possession, and thus, by direct attack, as it were, divides the plaintiff's possession and shares it, this conduct is a violation of the plaintiff's right of property. That there is a right of property of this kind has been decided in England in regard to information of stock quotations and other different kinds of news obtained to be furnished to those who will pay for it. *Exchange Telegraph Co.* v. *Gregory*, [1896] 1 Q. B. 147. *Exchange Telegraph Co.* v. *Central News*, [1897] 2 Ch. 48. This has also been held by different courts in this country. *Kiernan* v. *Manhattan Quotation Telegraph Co.* 50 How. Pr. 194. *Chicago Board of Trade* v. *Christie Grain & Stock Co.* 116 Fed. Rep. 944. *National Telegraph News Co.* v. *Western Union Telegraph Co.* 119 Fed.

Rep. 294. We are of opinion that one's possession of information which he has obtained, compiled, and put in form for a specific use, is a right which ought to be protected against those who would share it with him without his consent.

The next question is whether the giving of information by the plaintiff to its subscribers is a publication of it, such as dedicates it to the public and deprives the plaintiff of its right of control. It is well established that the private circulation of information or literary composition, in writing or in print, for a restricted purpose, is not a publication which gives the public a right to use it. *Prince Albert* v. *Strange,* 1 Mac. & G. 25. *Jefferys* v. *Boosey,* 4 H. L. Cas. 815, 867. *Exchange Telegraph Co.* v. *Gregory,* [1896] 1 Q. B. 147. *Exchange Telegraph Co.* v. *Central News,* [1897] 2 Ch. 48. *Bartlette* v. *Crittenden,* 4 McLean, 300. See also *Tompkins* v. *Halleck,* 133 Mass. 32 ; *The Mikado case,* 25 Fed. Rep. 183 ; *Press Publishing Co.* v. *Monroe,* 73 Fed. Rep. 196.

It has been held in *Ladd* v. *Oxnard,* 75 Fed. Rep. 703, 729, and in *Jewelers' Mercantile Agency* v. *Jewelers' Weekly Publishing Co.* 155 N. Y. 241, that where a company published a reference book, or a book of mercantile agency credit ratings to an unlimited number of subscribers, under a stipulation that the book was furnished as a loan and not as a sale, and that it should not go into other hands, there was a publication. Each of these suits was brought under the United States copyright act, for an infringement of the copyright, and the decision was on the ground that by reason of publication the copyright was not perfected. In the latter case three of the judges did not agree that there was a publication. The thing sent out in these cases was a book designed to be preserved and used for a considerable time. It was in a convenient form for transfer from hand to hand, and for use from time to time by different persons. We do not think that these cases very much resemble the case before us. The information given by the plaintiff in this case, as we infer, is of specific facts for particular persons or classes of persons, adapted to their interests, and furnished from time to time as the facts are ascertained. It seems very unlike the sale or loan of a large printed book, designed to be distributed among a large class of persons. We think the case falls within the principles

laid down in the cases first above cited. It makes no difference that the information in some of these cases was furnished by telegraph, and that in this it is furnished orally, or in writing or in print. We are of opinion that the averments of the bill do not show a publication which deprives the plaintiff of its rights of property.

. We have considered the case without reference to the question whether it would be possible to obtain a copyright upon the plaintiff's compilations, for we think its rights are the same, however this question might be decided. It would seem, however, to be impracticable to obtain copyrights in the course of the plaintiff's business, whether the material would be a subject for a copyright under the statute or not.

We do not deem it necessary to consider at length the objections raised by the special demurrer. Although the averments of the bill are not so full as might be desired, we are of opinion that they are sufficient.

*Demurrers overruled.*