(121 App. Div. 546.)

## BALL v. BROADWAY BAZAAR.

(Supreme Court, Appellate Division, Second Department.   October 18, 1907.)

**1. TRADE-MARKS AND TRADE-NAMES—NATURE.**

A trade-mark designates an article of commerce and is affixed thereto, being therefore universal, accompanying the article, and may be infringed anywhere; while a trade-name applies to a business, and is, as a rule, local, the proprietor having an exclusive right to the name in his locality only.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 1.]

**2. SAME—INFRINGEMENT.**

The trade-name and sign of the business of one engaged in making and selling children's clothing at a store on Twenty-Third street in the former city of New York, "Best & Co.—Lilliputian Bazaar," with the street and store numbers and the name "New York" added, is not infringed by one engaged in the same kind of business in the former city, now borough, of Brooklyn, under the trade-name and sign of "Broadway Bazaar—Brooklyn's Best Lilliputian Store, 1185 Broadway, Brooklyn."

Hooker, J., dissenting.

Appeal from Special Term, Suffolk County.

Action by Thomas R. Ball against the Broadway Bazaar. From a judgment for plaintiff, enjoining defendant from the use of a tradename, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

Herman N. Hansen, for appellant.
John W. Ingram, for respondent.

GAYNOR, J.  This is not a trade-mark case, but a trade-name case. A trade-mark designates an article of commerce, and is affixed thereto. It is thus general or universal, accompanying the article, while a trade-name applies to a business and is as a rule local.  Paul on Trade-Marks, § 177; Brown on Trade-Marks, § 91.  A trade-mark

may be infringed anywhere; but no so with a trade-name. For instance, that A. has a hotel called the Irving Hotel or the Cosmopolitan Hotel in place, does not prevent others from having hotels of the same name in other places; he has an exclusive right to the name in his locality only. Though simple, this illustration is of general application.

The plaintiff is engaged in making and selling children's clothes at 60 and 62 West Twenty-Third street in the former city of New York. The business was established there before the city of Brooklyn was made part of the new city of New York in 1897 as the borough of Brooklyn, and has always been local and advertised as local to that place. That the goods there sold may go to distant places or all over the country does not make a different case; the place of business, the place where the goods are purchased, is there. The trade-name and sign of the business is "Best & Co.—Lilliputian Bazaar," with the street and numbers and the name New York added. The defendant is engaged in the same kind of business at No. 1185 Broadway, Brooklyn, N. Y., i. e., the borough of Brooklyn, under the trade-name and sign of "Broadway Bazaar—Brooklyn's Best Lilliputian Store—1185 Broadway, Brooklyn."

It is manifest that no one could mistake either place or business for the other. The two names are of localities so different that it would be impossible. Each name carries the mind to an entirely different and distinct locality. It will not be disputed, I conceive, that the defendant could use its trade-name and sign for a business in Syracuse or Chicago, or even use the very name Lilliputian Bazaar there, without giving the plaintiff any right to complain. The name and business would be local to that place, just as Best & Co.'s name and business are local to a place. No one could confound the one with the other. Each would be selling Lilliputian clothes, i. e., clothes for little folk in different places. Whether the word Lilliputian, for being descriptive of the articles sold, could be the subject of a trade-mark, we do not need to consider, for that question is not before us, but only the question of the infringement of a trade-name. Now the name of Brooklyn is as distinct from the name New York as is the name of Syracuse or Chicago. If Brooklyn were still a separate city, no one could think of questioning this; but its identity has not been sunk, or even affected in the public mind, by its ceasing to be a city and becoming a borough. Brooklyn has as distinct an identity throughout the country as it ever had. It even retains its post office and post office name of Brooklyn, the same as does the former city of New York its post office and post office name. No one could mistake "Broadway Bazaar—Brooklyn's Best Lilliputian Store—1185 Broadway, Brooklyn," for "Best & Co.—Lilliputian Bazaar—60–62 West 23rd Street, New York City." It is quite impossible.

But the plaintiff has nevertheless obtained a judgment herein which forbids the defendant to use the words Best, Lilliputian and Bazaar "in connection with each other," the phrase Lilliputian Bazaar "either alone or in connection with the word Best," or the word Lilliputian at all, in its trade-name or sign.

It cannot be disputed that the defendant has the right to use the adjective best. It is equally indisputable that it has the right to use the common word bazaar. There are many stores and shops called bazaars. No one can exclusively appropriate either of these words. Nor could any one appropriate the exclusive right to call his bazaar the best bazaar or store. But it is said that the adjective best in the phrase Brooklyn's Best Lilliputian Store, and following after the word bazaar in the name Broadway Bazaar, would lead people to believe that it stood for the noun and proper name Best, and that therefore the impression conveyed would be that the store was Best & Co.'s. This is fanciful. No one could get such a notion from the defendant's sign or name. As to the prohibition in the judgment of the use of the phrase "Lilliputian Bazaar," the defendant does not use it, and there was therefore no issue of its use in the case.

The learned counsel have not been able to find decisions in point, but only because the plaintiff's case is unprecedented. Most of the trade-mark decisions cited are wholly inapplicable. The power of the courts in cases like this could easily be abused by being used in extreme or fanciful cases. It has to be restricted to cases of actual wrong and injury, neither of which exists in this case. There is no fraud in the case. Moreover, the motive with which one does that which he has the right to do is of no consequence.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur, except HOOKER, J., who dissents.