**A B C STORES, Inc., et al. v. T. S. RICHEY & CO. (No. 1129.)\***

(Court of Civil Appeals of Texas. Beaumont. Oct. 25, 1924. Rehearing Denied Nov. 12, 1924.)

1. **Trade-marks and trade-names and unfair competition ⬥35—Purchaser of store held not to have acquired right to use trade-name by purchase.**

Purchaser of store, with right to use trade-name for stated period, from one using such name by permission of another, which immediately repudiated sale thereof as unauthorized by it, and so notified buyer, *held* not to have acquired right to use it by purchase, in absence of evidence that seller had adopted and used it other than by permission.

2. **Trade-marks and trade-names and unfair competition ⬥31—Exclusive right to use trade-name and advertising paraphernalia in city held not acquired by prior adoption and user in other cities.**

Prior adoption and use of trade-name and advertising paraphernalia, by company operating retail grocery stores at Galveston and Houston, did not give it exclusive right to use them in Beaumont, to which its market did not reach; protection in use of trade-name being coextensive only with user's market.

3. **Trade-marks and trade-names and unfair competition ⬥45 — Common-law rights of user of trade-name in particular market not affected by subsequent registration by another.**

Registration of trade-name with secretary of state, under Rev. St. art. 706, does not give registrant doing a local business exclusive use thereof throughout state, nor vest title in registrant as against common-law title or rights of prior user in particular market; business, not trade-name, being protected.

4. **Trade-marks and trade-names and unfair competition ⬥43—Statutory provisions for registration generally apply only to words, marks or symbols already adopted and used.**

Statutory provisions for registration of trade-marks or trade-names generally apply only to words, marks, or symbols which have already become trade-marks or names, by adoption and user.

5. **Trade-marks and trade-names and unfair competition ⬥67 — Purchaser, continuing use of trade-name and advertising methods, previously used by permission, held entitled to protection.**

Purchaser of store, which he continued to operate under trade-name, and with same advertising methods and paraphernalia used in connection therewith before sale, despite protest of company by whose permission they had been used for almost year before such company opened store under same name, and using same advertising methods and paraphernalia, *held* entitled to protection of good will and trade-name.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by T. S. Richey & Co. against the A B C Stores, Inc., and others. Decree for plaintiff, and defendants appeal. Affirmed.

Boyles, Brown & Scott, of Houston, for appellants.

A. L. Shaw and F. M. Sheffield, both of Beaumont, for appellee.

O'QUINN, J. This is an appeal from a judgment perpetuating an injunction. The record discloses the following:

In September, 1919, appellant the A B C Stores, Inc., was incorporated under and by virtue of the laws of the state of Texas. The original incorporators were Ernest Alexander, W. D. Bell, and Edward Boyles; Boyles owning 70 of the 100 shares of stock. Alexander was president of the company from the time of its incorporation to January 12, 1923. Boyles has at all times been its secretary. Appellant opened its original and first store in Galveston, Tex., and later added a second store at Houston, Tex., and still later added another store at Houston. Some time in the year 1920, appellant adopted and began using as its advertising paraphernalia the A B C blocks appearing thus:

In June, 1921, Alexander and Wm. A. Ryan, under a joint-stock association, organized the Texas Food Shop and opened a store at Beaumont, Tex. In October, 1922, the Texas Food Shop was incorporated under the laws of Texas, and Alexander was its president at all times, until it was sold to appellee, about January 1, 1923. Alexander owned practically one-half of the stock. By

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted February 4, 1925.

permission of the appellant the A B C Stores, Inc., the Texas Food Shop used the A B C blocks in advertising in Beaumont, and its store was known and advertised as the A B C Store.

January 5, 1923, the Texas Food Shop, through Alexander, its president, made a bill of sale to T. S. Richey & Co., a partnership composed of T. S. Richey and Paul White, conveying to them the Beaumont store, fixtures, merchandise, and the right to use the trade-name "A B C Store" in the city of Beaumont for a period of 25 years, from May 28, 1921 (the date of the organizing of the Texas Food Shop), for a consideration of $22,570.46.

T. S. Richey, on June 21, 1921, became an employé of the Texas Food Shop, and was placed in control of, and had the control and management of, the Texas Food Shop store, known as the "A B C Store" of Beaumont from the time of its opening up to and until it was sold to T. S. Richey & Co., about January 1, 1923. During all of its operations, the Texas Food Shop, known as the "A B C Store" at Beaumont, was managed from Houston, and all books, both of appellant, the A B C Stores, Inc. (including the store at Galveston and the two stores at Houston), and the Texas Food Shop, or A B C Store at Beaumont, were kept in Houston and by the same employés. Alexander, president of both the A B C Stores, Inc., and the Texas Food Shop, or A B C Store at Beaumont, resided in Houston and supervised the operation of all the concerns from Houston. Richey, as manager of the Beaumont A B C Store, received all supplies, groceries, etc., and all orders, from Alexander, at Houston. Richey knew that the A B C Stores, Inc., at Galveston and Houston used no other trade-name or advertising medium other than the A B C blocks and accompanying insignia.

The by-laws of the A B C Stores, Inc., provide that the board of directors shall have absolute control of its affairs. The by-laws further provide that the president of the corporation shall be the chief executive officer and in entire control of any and all affairs of the corporation, subject to the direction and control of the board of directors and the by-laws, and that all deeds, mortgages, bills of sale, and all other formal instruments, outside of the regular course of its business, shall be signed by the president and attested with its corporate seal by its secretary.

On January 5, 1923, Alexander informed Boyles that he and Ryan had sold the Beaumont store to Richey and White. The next day Boyles went to Beaumont to see Richey, and, upon learning from Richey that he had a bill of sale from the Texas Food Shop, undertaking to convey the right to use the name "A B C Store," he advised Richey that Alexander did not have the authority to convey

the trade-name of "the A B C Stores" for a period of 25 years, or any other time. Richey immediately went to his bank and made inquiry, and found that the money paid into the bank the day before for the purchase of the A B C Store of Alexander had been drawn out. Boyles and Richey then went to the law office of A. L. Shaw, who represented Richey, and the matter was there discussed, and that evening Richey and Shaw went with Boyles to Houston, and that night there was a meeting in the office of Fulbright & Crooker, lawyers, and Alexander was present. At that meeting, Boyles stated to Richey and Shaw that there had been no authority from the board of directors of the A B C Stores, Inc., authorizing Alexander to sell the trade-name of the corporation, or of the right to use it. Later, on the 10th day of January, 1923, Boyles, as secretary of the A B C Stores, Inc., sent a telegram to Richey and White, advising them that the corporation had never authorized the granting of the use of the name "A B C Stores" to Richey, White, or any one else, and repudiated the transaction of Alexander with them, and confirmed the telegram with registered letters, which were duly received by the parties. On January 12, 1923, the board of directors of the A B C Stores, Inc., passed a resolution expressly repudiating Alexander's sale of the right to use the name "A B C Stores" to Richey and White, and Boyles went to Beaumont the next day and exhibited the original resolution of repudiation to Richey and his lawyer, Mr. Shaw, and again stated to them that the A B C Stores, Inc., would not sell or permit to be sold its trade-name or the use thereof for any period of time.

In November, 1923, the A B C Stores, Inc., opened a store in Beaumont and on November 26, 1923, filed and had registered in the office of the secretary of state, under provision of article 706, Revised Statutes, the A B C blocks and trade-name (being the advertising paraphernalia in controversy herein) as its trade-name and advertising paraphernalia.

The A B C Store of Beaumont was opened in June, 1921, by the Texas Food Shop, a joint-stock association composed of Alexander and Ryan, and, with the permission of the A B C Stores, Inc., was operated in the name of the "A B C Store" and used the advertising paraphernalia in question. Richey was the manager of the A B C Store in Beaumont from its inception until he and White purchased it from Alexander, about January 1, 1923. During all this time the trade-name of the store was "A B C Store," and the A B C blocks and advertising paraphernalia were used to advertise its business. After the sale of the store to Richey and White, the store, notwithstanding the controversy with appellant over the sale of the

use of the trade-name, was continued to be run and operated in the name of "A B C Store," and the same advertising paraphernalia, the A B C blocks, used until the opening by appellant, of its store in Beaumont in November, 1923, when this suit was brought by appellee to enjoin appellant from using the name "A B C Stores," or advertising with the A B C blocks in Beaumont and Jefferson county.

There was a decree in favor of appellee, from which appellant brings this appeal.

This case does not involve the infringement of a trade-mark, but is one in the nature of unfair competition, growing out of the use of the same trade-name and advertising paraphernalia in the same locality.

[1] Appellee claims the right to use the trade-name, both by purchase from the Texas Food Shop and by adoption and user. We do not believe that appellee's contention as to purchase can be sustained. While it is true that appellee purchased from Alexander, acting for the Texas Food Shop, and paid for the right to use the trade-name and advertising paraphernalia for 25 years, still the use of the trade-name "A B C Store" and the attendant advertising paraphernalia by the Texas Food Shop appears to have been by the permission of the A B C Stores, Inc., and, as Alexander did not testify on the trial, it does not appear that the Texas Food Shop adopted and used said trade-name as its trade-name, independently of said permissive use by appellant. It is undisputed that appellant at no time and in no way authorized Alexander to sell the trade-name or the use thereof, and, when it was made aware that he had done so, it immediately repudiated his act and so notified appellee; so that appellee's claim of right to use the trade-name by purchase, we think, cannot be sustained.

[2] But appellee also contends that it adopted and used the trade-name and advertising paraphernalia from and after purchasing the A B C Store from the Texas Food Shop, and after appellants' protest and repudiation of its purchase from Alexander, and that it so used same for a long period of time before appellant opened its store in Beaumont, and hence it is entitled to protection from appellant's use of same, by reason of its first appropriation and user in this territory.

In opposition to this contention, appellant contends that it was the first to adopt and use said trade-name, having adopted and used same in connection with its store in Galveston, Tex., in 1920, and later in connection with its two stores in Houston, Tex. It is undisputed that appellant did adopt and use the trade-name "the A B C Stores, Inc.," and used the advertising paraphernalia in question in both Galveston and Houston before the Texas Food Shop was organized, and

its store at Beaumont opened under the name of "A B C Store," and the advertising paraphernalia used in Beaumont; but we do not believe that this prior adoption and user of the trade-name and advertising paraphernalia at Galveston and Houston gave to appellant the exclusive right to use the same in the Beaumont territory. Appellant and appellee are engaged in business of the same nature, selling at retail groceries, produce, meats, etc. The business of each is wholly retail and purely local, and, before appellant opened its store at Beaumont, at points remote from each other. There was no competition between appellant and appellee until appellant entered the territory where appellee was engaged in sales. In cases of this character, we believe the well-established rule is that, in the use of a trade-name, one's protection is coextensive only with his market. What was appellant's market? It had one store in Galveston, Galveston county, Tex., and two stores in Houston, Harris county, Tex. It had none in Beaumont, or in Jefferson county, Tex., which is territory remote from either of appellant's established stores. Its business was retail and local, so that its market did not reach anywhere near to Beaumont, the territory occupied by appellees. The trade-name and advertising symbols of appellant could not extend into regions where its goods were not sold, where it had no customers, and where it had no trade. Eastern Outfitting Co. v. Manheim, 59 Wash. 428, 110 P. 23, 35 L. R. A. (N. S.) 251; Sartor v. Schaden, 125 Iowa, 696, 101 N. W. 511, 514; Kaufman v. Kaufman et al., 223 Mass. 104, 111 N. E. 691; Ball v. Broadway Bazaar, 121 App. Div. 546, 106 N. Y. S. 249; Hanover Star Milling Co. v. Allen & Wheeler Co., 208 F. 513, 125 C. C. A. 515, L. R. A. 1916D, 136; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; Pflirgh v. Eagle White Lead Co., 185 F. 769, 107 C. C. A. 659, writ of certiorari denied 220 U. S. 615, 31 S. Ct. 719, 55 L. Ed. 610; 26 R. C. L. § 12, pp. 839, 840; 38 Cyc. 825. As the cited authorities are directly in point and available, we do not deem it necessary to quote from same.

[3] But appellant says that, independent of its adoption and use of the trade-name and advertising paraphernalia in Galveston and Houston, it is entitled to the exclusive use of same throughout the state of Texas, by reason of its having, in pursuance of article 706, Revised Statutes, registered same with the secretary of state on November 26, 1923, prior to the bringing of this suit by appellee.

We believe this to be the controlling question in the case. If this contention is correct, then the judgment should be reversed and here rendered for appellant. After careful consideration, we think it doubtful whether registering the trade-name by appellant gave it the right of exclusive user coexten-

sive with the bounds of the state. As above stated, appellant's business as originally organized, and under which the trade-name was selected and the business since conducted, was and is local, not general. It sells by retail to local customers. It is not engaged in manufacturing goods, stamping them with its trade-mark and offering to sell them to the trade generally. It is not engaged in wholesale sales and shipments to different parts of the state. That being true, we do not believe the law (article 706, Revised Statutes) intended that the registering of a trade-name should render its use exclusive to the registrant as to all sections of the state. It is not believed that registration, under the statute, confers any greater or new rights than already existed at common law without registration. 38 Cyc. pp. 862, 863. Under the common law, the exclusive use of a trade-name was acquired by the one who first adopted and used it, but the exclusiveness of its use was confined to the locality or the extent of the market where the business was conducted. It is the business, and not the trade-name, that is protected. Hanover Star Milling Co. v. Allen & Wheeler Co., 208 F. 519, 125 C. C. A. 515, L. R. A. 1916D, 136, note 143. Registration of a trade-name cannot confer title upon the registrant, if some other individual, by prior adoption and use, has acquired a common-law title to same, nor can it vest a title in the registrant as against another's common-law title. Thomas G. Carroll & Son Co. v. McIlvaine & Baldwin (C. C.) 171 F. 125. This is but saying, in other words, that the subsequent registration of a trade-name by one cannot affect the common-law rights of a prior user. The registration by appellant occurred long after appellee's rights at common law had accrued, and after the controversy over appellee's right to use the trade-name in Beaumont had existed for nearly a year.

[4, 5] Furthermore, statutory provisions for the registration of trade-marks or trade-names, as a general rule, apply only to words, marks, or symbols which have already become trade-marks or trade-names by adoption and user. The purpose of registration is merely to facilitate the remedy, and in such cases confers no new rights. 38 Cyc. pp. 850, 851. The Texas Food Shop had been using the trade-name "A B C Store," and advertising with the A B C blocks in Beaumont from June, 1921, to January, 1923, and, though this is shown to have been with the permission of appellant, still the trade-name and the advertising methods were used in connection with the store for that time, and the business became and was known as such, and, after the Texas Food Shop sold its store to appellee, it continued to be operated as the "A B C Store," and the same advertising methods employed to build up its business.

This continued, despite the protest of appellant for almost another year before appellant opened its store in Beaumont under the same name, and advertised with the same methods and paraphernalia, when this suit was brought by appellee.

The good will of the business, and the trade-name indicative thereof in Beaumont, which had been built up by appellee by the expenditure of considerable money and more than two years of endeavor and honest dealing with its customers, were its property at the time appellant registered its trade-name and opened its store, and were entitled to the protection which the law gives.

We think the judgment should be affirmed, and it is so ordered.

Affirmed.