## GILMORE v. SAMMONS.  (No. 9491.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 17, 1925. Rehearing Denied March 7, 1925.)

**1. Literary property ⬥1—Author's property in manuscript continues only until publication, in absence of copyright.**

Author's property in manuscript continues only until publication, unless sole right of printing and reprinting, publishing, and vending is secured by copyright.

**2. Copyrights ⬥4—News items not within operation of copyright act.**

News items, relating to building and engineering construction work, *held* not within operation of copyright act.

**3. Literary property ⬥8 — Publication of news, collected at great expense by competitor, held unfair and illegal interference with business.**

Publication and use of news items relating to building and engineering construction work, collected at great expense by competitor, *held* unfair and illegal interference with business.

**4. Literary property ⬥3—Publisher held to have property interest in news items.**

Publisher *held* to have property interest in news items, relating to building and engineering construction work, collected at great expense and effort for his journals.

**5. Literary property ⬥9—Publication by competitor of news items, collected at great expense, may be enjoined.**

Where news items relating to building and engineering construction work were collected at great expense and effort, complainant *held* entitled to enjoin publication and use thereof by competitor.

On Motion for Rehearing.

**6. Evidence ⬥82—Presumption is that Court of Civil Appeals would have followed decision of United States Supreme Court.**

Presumption is that Court of Civil Appeals would have followed later decision of United States Supreme Court, had it been extant when similar issue was determined.

**7. Courts ⬥247(5)—Appeal from interlocutory order not certified to Supreme Court.**

Where appeal is from interlocutory order, and it is important that case be tried on its merits as soon as possible, appellate court will refuse to certify case to Supreme Court.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by A. I. Gilmore against M. L. Sammons. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

R. B. Humphrey, of Dallas, for appellant.
Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellee.

LOONEY, J. This appeal is from an order of the court below, sustaining a general demurrer to appellant's petition and denying his prayer for the issuance of an interlocutory injunction.

Appellant, A. I. Gilmore, and appellee, M. L. Sammons, are competitors in the business of gathering news in regard to all lines of building and engineering construction work, and publishing same for profit throughout a common territory serving largely the same constituency.

Appellant is, and has been since April 26, 1923, the owner, editor, and publisher of the Texas Contractor, a paper issued in the city of Dallas on Thursday of each week, for which he charges subscribers $5 per annum, and is, and has been since April 16, 1923, the editor, owner, and publisher of a bulletin news service called Advance Construction Reports, issued at Dallas on Monday, Wednesday, and Friday of each week, for which he charges $30 per annum. The purpose of appellant in publishing and distributing these documents is to furnish to builders, contractors, manufacturers, and dealers in building material, and to all others who may be interested, fresh, accurate, and dependable news in regard to all lines of building and engineering construction work. All items of news in regard to these matters that are published in the weekly Advance Construction Reports are reproduced in the weekly issue of the Texas Contractor.

Appellant gathers and compiles this information at great expense and, to that end, keeps employed specially trained reporters, whose time and efforts are directed to securing the earliest and most complete reports from architects, engineers, owners, correspondents in cities and larger towns, and by reading general newspapers. The information thus obtained is fresh, complete, and dependable.

Appellee is the owner, editor, and proprietor of a publication called Building and Engineering Digest, also a bulletin news service known as Industrial Record Advance Sheet, both issued at Dallas, Tex. The first named is a bimonthly, issued on the 1st and 15th days of each month, for which is charged a subscription price of $3 per annum, and the latter is issued twice each week, on Wednesday and Saturday, for which appellee charges $16 per annum.

The business of appellant and appellee is the same; they maintain, and have main-

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 29, 1925.

tained during the period of time involved in this suit, the same kind of news service and for identically the same purpose, serving in a large measure the same constituency.

In paragraph 6 of appellant's petition he charges that:

"The defendant, M. L. Sammons, on or about the 26th day of April, 1923, began to take from the columns of Texas Contractor the said construction news items and to republish the same in his (defendant's) hereinbefore named publications, and has from that date to this time continuously and systematically taken said items in the manner and for the purpose stated, without the permission of plaintiff and over the repeated protest and objection of plaintiff, republishing in Industrial Record Advance Sheet on each Saturday the expensive and valuable news items presented in Texas Contractor on Thursday of the same week, or in part on Saturday and in part on the next following Wednesday, and thereafter again republishing the said items in the next succeeding issue of Building and Engineering Digest; the defendant takes, and has taken, the said items and republished the same bodily, or in rewritten and rearranged form, thus attempting to disguise the said items and to conceal the source thereof."

It further appears from appellant's allegations that each of the news items obtained by him has a property value of $1.50 when acquired, and retains this value for six months after publication; that they are sold by him to the classes of persons hereinbefore mentioned, and that a very much larger number of persons would buy his news service but for the conduct of appellee as alleged; that the republication and sale by appellee of the news items in competition with appellant, and at a lower price than that charged by appellant, and the other acts and things of which complaint is made, constitute unfair competition in business, is unjust, and an illegal invasion and taking of appellant's property. That appellee, since October 6, 1924, has taken from the columns of appellant's publications 374 news items in regard to building and engineering construction work, and republished the same in the columns of the papers owned and published by him, and sold the same in competition with appellant.

Appellant prayed judgment for $561, being the value of 374 items of news at $1.50 each, appropriated and used by appellee, and for the issuance of temporary and permanent injunction forbidding appellee from taking from appellant's publications news items, and from republishing and selling the same in any manner or form.

On hearing, the court sustained a general demurrer to appellant's petition and refused the interlocutory injunction.

Appellant's contention is that he has a property right in these news items gathered by him at great expense; that they retain their value as news for six months after publication; that this property right is not lost by the publication, but continues so long as they have a value; that the conduct of appellee in pirating news from his columns and publishing and selling the same in competition with him in business was, and is, unfair, an unjust invasion of his rights, and an illegal taking of his property, for which he is entitled to the relief sought.

The contention of appellee is that appellant, by publishing the news items, lost the right of property and control; that they were in the public domain; became common property; and that any one had the legal right, by publication or otherwise, to communicate the intelligence to anybody and for any purpose, even in competition with appellant in business.

[1] This position of appellee is based on the universally recognized common-law doctrine that an author's property in his manuscript continues only so long as it is not made the subject of publication, but, when once published, his control over the same and the use that others may make of it is at once at an end, unless the sole right of printing and reprinting, publishing, and vending the same is secured to the author or proprietor by copyright.

This rule is tersely stated in 25 Cyc. 495, as follows:

"The common law protects literary property in the hands of the owner only so long as it remains unpublished. Publication is regarded by the law as an abandonment or dedication to the public of all rights in such property, and, after publication, the author or owner has no longer any exclusive right to the control of this production except as may be conferred upon him by copyright statutes."

[2] No question is presented here under the copyright statute, nor, in fact, could such a question arise, for the reason that news and news items such as those under discussion are not within the operation of the copyright act. 13 C. J. 955, 956. Therefore, if the case is within the rule contended for by appellee, the judgment of the court below must be affirmed, because, unquestionably, the news items republished by appellee, about which complaint is made, had previously been published by appellant, and in this form were sold by him to his subscribers, and were offered for sale to all others who might desire to subscribe for or purchase his publications.

[3-5] It is our view, however, that the case does not come within this rule, but that the question presented for our decision is whether the course of conduct of appellee, admitted by the demurrers, in appropriating for profit to himself the news items taken from the papers and bulletins of appellant and selling the same in competition with appellant, con-

stituted a violation of appellant's property rights and was such unfair competition as will justify a court of equity in granting relief.

The demurrer admits that since April, 1923, appellee has taken from the columns of appellant's paper news items possessing a property value that were obtained by appellant at the expenditure of great labor and money, and that the news items thus appropriated were published and sold by appellee in business competition with appellant, thereby diminishing the profits which appellant would otherwise have garnered. This, in our opinion, constituted an unfair and illegal interference with appellant's business, and could have but one effect; that is, to deprive appellant of a portion of his fairly earned profits and to divert the same to the coffers of appellee.

Does appellant own a property interest in the news items gathered by his efforts and at great expense? We think so. The case of Dodge Co. v. Construction Information Co. (183 Mass. 62, 66 N. E. 204, 97 Am. St. Rep. 412) reported in 60 L. R. A. 810, presents a very similar fact case to the one at bar. In that case, on the point under consideration, the court said:

"That there is a right of property of this kind [meaning news items such as those under consideration] has been decided in England in regard to information of stock quotations and other different kinds of news obtained to be furnished to those who will pay for it. [Citing numerous authorities.] We are of opinion that one's possession of information which he has obtained, compiled, and put in form for a specific use is a right which ought to be protected against those who would share it with him without his consent."

The consensus of opinion on this subject is summed up and stated in 13 C. J. 955, as follows:

"There is a common-law property in facts and information collected and utilized by skill, labor, and expense, although the same information is available to any one who chooses to collect it."

That these news items, in the estimation of appellee, possess a property value is revealed by his persistent conduct in republishing them for sale in competition with appellant, and, further, by his vigorous defense of the right to continue such practice.

This cause, in our opinion, must be ruled by the doctrine announced by the Supreme Court of the United States in the case of International News Service v. Associated Press, reported in the following: 248 U. S. 215, 39 S. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293.

The Associated Press sought to enjoin the International News Service from selling as its own news taken from bulletins issued by the association or its members, and from newspapers published by members of the association. The court granted the injunction and, in answer to the contention that by posting the news on bulletin boards and publishing the same in papers controlled by members of the association the news became public property, and that complainant no longer had the right to control the same, said:

"The fault in the reasoning lies in applying as a test the right of the complainant as against the public, instead of considering the rights of complainant and defendant, competitors in business, as between themselves. The right of the purchaser of a single newspaper to spread knowledge of its contents gratuitously, for any legitimate purpose not unreasonably interfering with complainant's right to make merchandise of it, may be admitted; but to transmit that news for commercial use, in competition with complainant—which is what defendant has done and seeks to justify—is a very different matter. In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown, and by disposing of it to newspapers that are competitors of complainant's members is appropriating to itself the harvest of those who have sown. Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business."

According to our conception of this case, the court below erred in sustaining the demurrer to appellant's petition and in refusing the injunctive relief sought. The cause is therefore reversed and remanded, for further proceedings.

Reversed and remanded.

## On Motion for Rehearing.

After a very careful reconsideration of the case on appellee's motion for rehearing, we find no reason to change our decision.

Appellee insists that our decision conflicts with that of the Texarkana Court of Civil Appeals rendered in Vernon Abstract Co. v. Waggoner Title Co., 49 Tex. Civ. App. 144, 107 S. W. 919. It is not clear that the decisions conflict with each other, in that the decision in the instant case turns on the question of unfair business competition. This question was not prominent in the case discussed by the Texarkana court.

The general rules of the law announced by the Texarkana court are not denied by

this court, in fact were affirmed ·and reannounced. However, another element entered; that is to say, the question of unfair competition, upon which we decided this case without regard to the general question of property in news items or in unpublished works, as it exists at common law, and without regard to the copyright act, even if the provisions of the act are applicable to news items such as are under consideration, which, in our opinion, is not the case.

As stated in the original opinion, we· followed and applied to this case the doctrine announced by the Supreme Court of the United States in the case of International News Service v. Associated Press, 248 U. S. 215, 39 S. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293, which was decided December 23, 1918, more than ten years after the decision by the Texarkana court in the case of Vernon Abstract Co. v. Waggoner Title Co., supra.

[6] We will indulge the presumption that the Texarkana court would have followed the doctrine announced by the Supreme Court of the United States if its decision had been extant at the time; that is to say, if the case, as presented, called for the application of the doctrine.

[7] As this appeal is from an interlocutory order, it is a matter of importance to all concerned that the case be tried on its merits at as early a date as is practicable. For these different reasons, we do not feel called upon to certify, the case to the Supreme Court.

Appellee's motion for rehearing will be overruled.

Overruled.