**McMANN v. SECURITIES AND EX-
CHANGE COMMISSION.
No. 157.**

Circuit Court of Appeals, Second Circuit.
Jan. 18, 1937.

Garey & Garey, of New York City
(Eugene L. Garey, Earl J. Garey, Milton
I. Hauser, and Edward J. McGoldrick, Jr.,
all of New York City, of counsel), for
appellant.

John J. Burns, of Washington, D. C., and Ernest Angell, of New York City (William V. Holohan and Pierce W. Bradley, both of New York City, and Charles R. Kaufman, of Washington, D. C., of counsel), for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree denying an injunction pendente lite in a suit brought by the plaintiff, McMann, against his brokers, Engel & Co., in which the Securities & Exchange Commission has intervened. The application was to prevent the brokers from complying with two subpoenas duces tecum issued by the Commission, the first requiring them to produce before one of its examiners a copy of McMann's account between December 1, 1935, and March, 1936; and the second, a copy of the same account from August 1, 1935, to November 30th, together with "the opening position" on the first day, and "the closing position" on the last. McMann had been a customer of Engel & Co. for some time and had employed them in numerous transactions in stocks, among them in shares of the Budd Wheel Company and of the Wil-Low Cafeterias, Inc.; the Commission had begun an investigation into transactions in the shares of these companies, and more particularly into the conduct of McMann and others who were suspected of having paid persons, ostensibly disinterested, to recommend the purchase of these stocks by the public. These payments did not appear from the execution of McMann's orders for the purchase and sale of the stocks in question; the whole account was necessary to disclose them. Engel & Co. were ready to obey the subpoenas, and will do so if not enjoined; but McMann asserts a constitutional immunity against any disclosure to the Commission of information contained in the books. He argues that, as all the transactions were confidential, the information was privileged and protected by the Fourth Amendment; it was "property" in which he alone was interested. Furthermore, the subpoenas independently infringe his immunity as "unreasonable searches." Finally, he asserts that he may protect himself by injunction, because, if the information be once disclosed, the injury is irreparable. The judge denied the motion and McMann appealed.

A broker is indeed an agent, and as such a fiduciary; he is bound to act for his customer, and not to betray to others what he may learn in the course of his duties. Restatement of Agency, § 395, Comment b. On the other hand the duty to disclose in a court all pertinent information within one's control, testimonially or by the production of documents, is usually paramount over any private interest which may be affected. Wigmore, §§ 2192, 2193. There are of course the traditional privileges touching communications made in certain confidential relations; but a broker's customer is not a client, a penitent, a patient or a spouse. Therefore, although we assume, as we do, that the conduct of investigations under these statutes is subject to the same testimonial privileges as judicial proceedings, it will not serve McMann; he must erect a new privilege ad hoc. The suppression of truth is a grievous necessity at best, more especially when as here the inquiry concerns the public interest; it can be justified at all only when the opposed private interest is supreme. Very near the end in the hierarchy of values which might dictate such a privilege would be the secrecy of a man's speculations upon a stock market in an inquiry into the existence of trade practices which a statute has condemned. Capital Company v. Fox, 85 F.(2d) 97, 101 (C.C.A. 2). Thus, the contents of McMann's accounts would have been available to the Commission, though he had communicated it to Engel & Company. But he had not done even that; the accounts in part merely recorded events upon a public market, the "Curb Exchange," and in part payments or deliveries by one party to the other; matters which would not be within even the privilege arising from one of the recognized confidential relations. We do not forget that, when the proposed disclosure is not for a public purpose, courts have frequently forbidden the betrayal of information acquired under promise of secrecy or as a fiduciary; and at times they have spoken of such information as "property" of the principal. Board of Trade v. Christie G. & S. Co., 198 U.S. 236, 251, 25 S.Ct. 637, 49 L.Ed. 1031; F. W. Dodge Co. v. Construction Information Co., 183 Mass. 62, 66 N.E. 204, 60 L.R.A. 810, 97 Am.St.Rep. 412; Exchange Tel. Co. v. Gregory & Co., [1896] 1 Q.B. 147. But the very fact that testimonial privileges are based upon specified confidential relations, is proof that they do not extend to all, and it hardly

needs to be said that nobody by contract, express or implied, can abridge public duties. So far as the principal's rights may be classed as "property" at all, they are subject to this condition. The attempted investigation may indeed lack legal sanction, Hearst v. Black (App.D.C.) 87 F.(2d) 68; Brex v. Smith, 104 N.J.Eq. 386, 388, 146 A. 34; and the officer who conducts it will then stand no better than any other interloper; but if it be duly authorized, it is no more subject to obstruction than judicial proceedings. In passing we are to remember that we are not dealing with the right of literary property, including even such compositions as ordinary letters. Folsom v. Marsh, Fed.Cas.No.4,901, 2 Story, 100. That may be "property" stricti juris, but it is limited to the form of the expression, and never extends to its substance; it would not here protect the information contained in the books, even if McMann had written them. Nichols v. Universal Pictures Corp., 45 F.(2d) 119 (C.C.A.2). Finally, although we recognize that much of the discussion, and perhaps the decision, in Zimmermann v. Wilson, 81 F.(2d) 847 (C.C.A.3), supports the plaintiff's position, as Judge Patterson said, that case stands alone, and it does not persuade us, as it did not persuade him.

Nevertheless, though the information was not itself protected, it does not follow that all means of extracting it were lawful. Some certainly were not; among them, an "unreasonable search." True, McMann was not in possession of the papers, and probably that ended the matter anyway, the immunity being a personal protection to Engel & Co. against oppressive official action; but arguendo we will assume that if they could have resisted the subpœnas, he, as their customer and principal, could have compelled them to assert their privilege. They had no privilege to assert. No doubt a subpœna may be so onerous as to constitute an unreasonable search. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. Even then, the sanction is unobjectionable, unlike a descent upon one's dwelling or the seizure of one's papers; the search is "unreasonable" only because it is out of proportion to the end sought, as when the person served is required to fetch all his books at once to an exploratory investigation whose purposes and limits can be determined only as it

proceeds. The investigation at bar was no such "fishing excursion," it was limited to transactions in the two companies, as to which the Commission already had some evidence of violations of the statute. The documents demanded were few and their production did not interfere with the business of Engel & Company. There was no oppression, or evidence of any other motive than a lawful investigation. Unless such subpœnas are valid, it it impossible to see how the statutes can be enforced at all, or how any wrongdoer can be brought to book.

That enough of the Act of 1933 (15 U.S.C.A. § 77a et seq.) is constitutional to authorize the investigation undertaken, we have already held. Securities & Exchange Commission v. Jones, 79 F.(2d) 617; Id., 85 F.(2d) 17. So much of our decision was not disturbed in Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015. We assume that the point is raised again only to preserve it, if the case should go to the Supreme Court.

Order affirmed.