In re INTERNATIONAL CORPORATION CO., Inc.

District Court, S. D. New York.
Jan. 17, 1934.

George Z. Medalie, U. S. Atty., of New York City (Samuel C. Coleman and Ira Koenig, Asst. U. S. Attys., and Frederick K. Slanker, Sp. Atty., Bureau of Internal Revenue, all of New York City, of counsel), for Commissioner of Internal Revenue.

Davis, Wagner & Heater, of New York City (Lawrence C. Hull, Jr., and Oscar B. Frazer, both of New York City, of counsel), for International Corporation Co., Inc.

KNOX, District Judge.

This is a motion by International Corporation Company, Inc., to set aside an order of this court dated November 10, 1933, directing the company and/or its treasurer to "produce all books, papers, documents and records relating in any way to the income tax liability for the years 1931 and 1932 of the International Corporation Company, Inc., and in particular, the names and addresses of all persons for whom foreign corporations were organized during these years, and the names of such corporations. * * * " The company also seeks an order perpetually enjoining Albert Schwartz, an employee of the Bureau of Internal Revenue, and J. R. Baradel, internal revenue agent in charge, their agents, servants, and employees, from at any time hereafter taking any steps to compel the company to disclose the names and addresses of any persons for whom foreign corporations were organized during the years 1931 and 1932, and the names of any such corporations.

The business of the International Corporation Company, Inc., as appears from the moving affidavit, is that of rendering assistance, exclusively to lawyers, in the organization of corporations. It filed returns and paid income taxes for the calendar years 1931 and 1932. The return for 1931 was examined, and on November 16, 1932, the company was advised by the internal revenue agent in charge that his office was recom-

mending that the said return be "accepted as correct," subject to "approval in Washington." The income tax return for 1932 has not yet been examined.

On October 3, 1933, the Commissioner of Internal Revenue addressed a letter to the company in the following form:

"While it is the policy of the Bureau to make as few inspections of books of account and records of taxpayers as possible, it seems necessary before finally closing your case, to make a reinvestigation of your books and records for the year 1931 in order to properly verify your return for that year. A reexamination therefore will be made.

"I am sure you will permit our representatives to have access to all of your books and records and that you will cooperate fully with them. I trust this will not cause you any inconvenience.

"This notice is sent in compliance with section 1105 of the Revenue Act of 1926."

This letter was delivered by Internal Revenue Agent Schwartz, to the treasurer of the company, on October 6, 1933. Schwartz, thereupon, requested an examination of the records of the company for the years 1931 and 1932. The company refused him permission so to do unless the reinvestigation of the 1931 return, and the original investigation of its 1932 return, be circumscribed in accordance with limitations proposed by the company.

On October 11, 1933, the company wrote a letter to the Commissioner of Internal Revenue challenging the government's right to obtain all of the information it sought. On October 26, 1933, the internal revenue agent in charge executed and delivered to the company a summons entitled, "In the Matter of the Tax Liability of International Corporation Company, Inc. for the years 1931–1932," and directing the production of the following: "All books, papers, documents and records relating in any way to your income tax liability for the years 1931 and 1932 and, in particular, the names and addresses of all persons for whom foreign corporations were organized during these years, and the names of such corporations."

Upon the failure of the company to comply with this summons, the United States Attorney applied for and secured the order signed on November 10, 1933, which the company now moves to vacate.

The company, although willing to produce certain of its books and records which are said to be sufficient to show the correct-

ness of its tax returns, contends that it should not be compelled to disclose the names of the attorneys for whom it formed corporations, or the names of such corporations. Claim is made that such information is in no way pertinent to the determination of the truthfulness of the tax returns, and that the true purpose of the examination sought is not to ascertain the correctness of the company's returns, but to discover the names of unidentified corporations which may be evading the revenue laws. Such an examination, the petitioner insists, is purely a governmental fishing expedition quite beyond the authority of the Commissioner of Internal Revenue, under section 618 of the Revenue Act of 1928 and section 1105 of the Revenue Act of 1926 (26 USCA §§ 1247, 1248), and is violative of the company's rights under the Fourth and Fifth Amendments to the Constitution.

The government contradicts this assertion, and avows that the purpose of the Commissioner of Internal Revenue and his agents is to determine the true tax liability of the company.

The sections of the Revenue Acts referred to above provide as follows:

"§ 1247. Examination of books, papers, and records; taking testimony. The Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is hereby authorized, by any officer or employee of the Bureau of Internal Revenue, including the field service, designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons.

"§ 1248. Same; number of inspections of taxpayer's accounts allowable; exceptions. No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

Under substantially similar provisions of the Revenue Act of 1921 (sections 1308, 1309, 42 Stat. 310), it has been held that a bank having books and records material to the ascertainment of the correctness of income tax returns of a taxpayer is not protected by the Fourth Amendment to the Constitution from being required to produce such books and records. United States v. First National Bank of Mobile (D. C.) 295 F. 142. In a more recent case, Brownson v. United States, 32 F.(2d) 844 (C. C. A. 8th), it was held proper to require the city superintendent of a telegraph company to produce documents relative to a taxpayer's receipt of certain money by wire in an investigation by the Commissioner of Internal Revenue concerning the liability of such taxpayer. Still more recently in the case of Miles v. United Founders Corporation (D. C.) reported in 5 F. Supp. 413, Prentice-Hall 1933 Federal Tax Service, pages 2179, 2180, the government sought to obtain a list of stockholders from the books of a corporation in order to determine the amount of such stockholders' taxable gain resulting from the receipt of the stock of such corporation in exchange for the stock of another company. The court held the government to be entitled to such information saying: "It is the duty of a corporation, where any question arises as to the taxability of transfers or exchanges of stock, to disclose the names of the exchanging stockholders, so that the question of each stockholder's income may be adjusted and assessed if lawful to do so." All of these cases, which are relied upon by both parties, involve the right of the government to information from persons other than a taxpayer. But, says petitioner, in the first two of these cases, the government was investigating the income of specified persons; and in the case last mentioned the government sought the names of persons who, although their names were unknown to the government, were definitely identified as a class, to wit, the stockholders of the United Founders' Corporation, who were parties to a specific transaction from which taxable income was claimed to have resulted. From this it argues that the above decisions do not tend to justify the present investigation where the government is not seeking to investigate the income of any particular class of persons, or of parties to any particular transaction. Support for this position may be found, it is said, in the decision of the Supreme Court in Federal Trade Commission v. American Tobacco Company, 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696, 32 A. L. R. 786, where it was held that a fishing expedition into the papers of a private cor-

poration by the Federal Trade Commission upon the possibility that they might disclose evidence of crime was beyond the power conferred by the Federal Trade Commission Act (15 USCA §§ 41–51), in the light of the purpose of the Fourth Amendment. Although the company argues that what is requested of it is comparable to that which was sought from American Tobacco Company, the papers before the court do not establish this to be the fact. On the contrary, the subpœna is entitled, "In the Matter of the Tax Liability of the International Corporation Company, Incorporated, for the years 1931, 1932." In the absence of evidence to the contrary, it cannot be assumed that the investigation is other than it purports to be, or than the Commissioner declares it to be. And, in any event, the question before the court has to do more particularly with the power of the government in the premises than with the motive which animates its actions. See Stanwood v. Green, Fed. Cas. No. 13,301. The fact that an administrative body cannot obtain information by one course of procedure does not necessarily preclude the acquisition of such information by another means. Cf. Silverhorne Lumber Company v. United States, 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426.

■ The precise question before the court is whether the Commissioner, in an investigation of the income of this taxpayer, can require it to produce all the documents called for by the subpœna. The criterion set up by section 618 of the Revenue Act of 1928 (26 USCA § 1247) is whether the books the Commissioner wishes to inspect have any "bearing upon the matters required to be included in the return. * * * " Obviously, the taxpayer cannot be the judge of what books and papers are relevant and material, and thus restrict the examination of his financial affairs to papers of his own selection. A determination of the matter, in the first instance at least, is for the Commissioner, who is charged with the duty of verifying the correctness of the taxpayer's returns. Clearly, all records of financial transactions on the part of the taxpayer are pertinent to an inquiry into the correctness of his income returns. See Stanwood v. Green, supra. All books and papers showing the receipt or expenditure of money by the taxpayer must be examined if there is to be a real and not merely a formal check-up of the correctness of his returns. The examination of records such as these, in no proper sense, can be termed a "fishing expedition," such as was condemned in the American Tobacco Case. If the pertinent records of third persons can be scanned in an inquiry into the correctness of the return of a specified taxpayer, the financial records of the taxpayer himself certainly are subject to scrutiny. See Bolich v. Rubel, 67 F.(2d) 894, decided by the Court of Appeals of this circuit, on December 4, 1933. It follows that the order should not be vacated in so far as it requires the production of "all the books, papers and documents and records relating in any way to the income tax liability for the years 1931 and 1932 of the International Corporation Company, Inc." For similar reasons, it will not be vacated with respect to "the names and addresses of all persons for whom foreign corporations were organized." Since the company's business was to organize such corporations, it is proper for it to be required to disclose the names of the persons for whom it acted, in order that the correctness of its statements with respect to the amount of money received from such persons can be verified. That the records which will disclose this information may also contain other matter which, standing alone, could not be required by the Commissioner, does not preclude their production before him. See Cooley v. Bergin (D. C.) 27 F.(2d) 930; United States v. First National Bank of Mobile, supra. The practical result of a contrary rule would be that a taxpayer could always resist the production of records containing matter to which the government is entitled, by including upon such records material whose separate production the government could not require. Nor can the company complain that its private affairs may be divulged to the public. The right to inspect income tax returns is strictly limited to the agencies enumerated in section 257 of the Revenue Act of 1926 (26 USCA § 1024), and section 1115 of that act (26 USCA § 1025) makes it "unlawful for any collector, deputy collector, agent, clerk, or other officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person * * * *the amount or source of income, profits, losses, expenditures, or any particular thereof,* set forth * * * in any income return. * * * " (Italics mine.)

■ Presumably, there will be no improper disclosure of information by agents of the government. Whether the company should be required to disclose, in addition to the names of persons for whom foreign corporations were organized, "the names of such cor-

porations," remains for decision. Upon this point, the government has failed to demonstrate the materiality of such disclosure. While the courts should not unduly circumscribe the investigatory powers permitted to the Commissioner of Internal Revenue in the performance of his highly important duties, such powers are not utterly unrestricted, as is contended by the government. Cf. Federal Trade Commission v. American Tobacco Company, supra; United States v. Louisville & Nashville R. Co., 236 U. S. 318, 335, 35 S. Ct. 363, 59 L. Ed. 598; Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253. Under the statute, which is the measure of the Commissioner's powers, the information sought must be material to "matters required to be included in the return." Revenue Act of 1928, § 618 (26 USCA § 1247).

So far as has been made to appear, the particular name of a corporation organized by petitioner would seem to have nothing whatsoever to do with the correctness of the income, or the deductions, reported in its return.

The motion is granted in so far as it seeks to strike from the order of November 10, 1933, the words, "and the names of such corporations." But, in granting this relief, I do not mean that the government may not require the production of books or records in which such information may appear, if it be that such books and records contain other information to which the Commissioner is entitled. In other words, the company cannot resist producing books of account pertinent to the inquiry upon the ground that they also contain the names of corporations which petitioner has organized.

Except as above outlined, the motion is in all respects denied.