**In re ANDREWS' TAX LIABILITY.**
No. 5725.

District Court, D. Maryland.
April 2, 1937.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., for the Commissioner.

Emory H. Niles (of Niles, Barton, Morrow & Yost), of Baltimore, Md., for respondents.

CHESNUT, District Judge.

The petitioner in this case is the Commissioner of Internal Revenue; and the respondents are the administrators of Le-Roy L. Andrews, Deceased, and Henry C. Evans, as a member of the firm of Stein Bros. & Boyce, stock brokers of Baltimore. The jurisdiction of the court is based on United States Code Annotated, title 26 (revised) § 1523, which provides as follows:

"(a) *To enforce summons.* If any person is summoned under the internal-revenue laws to appear, to testify, or to produce books, papers, or other data, the dis-

trict court of the United States for the district in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

The petition alleges that the taxpayer, LeRoy L. Andrews, filed income tax returns for the years 1929 to 1932, inclusive; that the taxpayer's books for 1931 and 1932 have been inspected; but that those for 1929 and 1930 have never been inspected and that the Commissioner desires to make an examination of them and a further examination of those for the year 1931 because, as the petition alleges, he has reason to "believe that certain amounts claimed as losses resulting from sales of stock in each and all of said returns were wrongfully and fraudulently so claimed with intent to evade tax, hence the necessity for ascertaining the correctness of such returns, and each of them", and he therefore authorized an Internal Revenue agent at Baltimore to make the examination. It is further alleged that the respondents as administrators of the estate of the taxpayer are in possession of the books and records but have refused to exhibit them upon request or to obey the summons to appear and testify with regard to them. The jurisdiction of the court under the statute above quoted is therefore invoked to enforce the summons against the administrators and against Mr. Evans also. The administrators have answered justifying their refusal on the ground that by the applicable Revenue Act of 1928, §§ 275 (a) and 276 (a), 26 U.S.C.A. §§ 275 (a) note, 276 (a), it is provided as follows:

"§ 275 * * * (a). The amount of income taxes imposed by this Title [chapter] shall be assessed within two years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

"§ 276 (a). In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

It is further pointed out in the answer that the two-year period of limitations for each of the tax years 1929, 1930 and 1931 had expired before the demand was made upon the administrators and that there is no further power or authority in the Commissioner to assess additional taxes

for those years unless the returns were false or fraudulent; and it is further said that the petition does not contain the averment of any facts showing such fraud.

Counsel for the Commissioner contend that statutory authority for the examination is contained in United States Code Annotated, title 26, § 1514 (revised) as follows: "to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

It is pointed out that there is no limitation of time attached to this authorization for examination; and under the Revenue Statutes which were applicable to the returns for the years in question, there is no limitation on the time within which an assessment may be made by the Commissioner in case of false and fraudulent returns. The Commissioner therefore contends that there is no time limitation in this case on his right of examination of the taxpayer's books. Counsel for the respondents do not dispute the right of the Commissioner to have the examination made if fraud is shown but it is contended that as no fraud has been shown the examination is not warranted and is oppressive. The question thus presented is whether the authority of the court should be exercised to require the respondents to submit to the examination *without the prior establishment of fraud by the taxpayer.*

At the hearing in this matter counsel for the Commissioner submitted the testimony of a number of witnesses, for the purpose of showing the existence of a reasonable basis for the suspicion of fraud but without an offer to prove fraud at this time. The substance of the testimony was to the effect that in the examination of the taxpayer's books for 1932, in connection with his stockbrokers' books, it was found that certain sales of securities, made the basis of deductions for loss, purported to be sales by the taxpayer to his wife, and the Commissioner determined that the alleged losses were not deductible because not real, and he consequently increased the tax; that a re-examination of the tax-

payer's returns for 1929, 1930 and 1931 also showed deductions for losses in stock sales; and that incidentally in the investigation with regard to the 1932 return an examination of the stockbrokers' records showed sale transactions between husband and wife as of December 30, 1929 (possibly consummated early in 1930) apparently similar to those of 1932. It also appeared that many if not all the securities involved in the alleged sales were included in the inventory of the wife's estate after her death. It is sufficient to say at this time that the evidence produced does not of itself show fraud, and it is not asserted by counsel for the Commissioner that it is sufficient for that purpose; but it does furnish probable cause for the suspicion of fraud which justifies an examination of the taxpayer's books for 1929 and 1930; although not for the year 1931.

I cannot take the view urged by the administrators (who did not themselves make the return and have no personal knowledge of the matters in controversy) that the Commissioner is precluded from a further examination because the two-year period has expired and no fraud has been presently shown. The purpose of the examination is to ascertain whether there was fraud in the transaction and if this can be shown then the two-year period is not a bar. On the other hand I also cannot take the view urged by the Commissioner that any and every demand for examination of the taxpayer's books must be acceded to irrespective of the lapse of time. While there is apparently no express statutory limitation as to the time within which a taxpayer's books may be further examined when determined to be necessary by the Commissioner (see section 1105 of the Revenue Act of 1926, 26 U.S.C.A. § 1521), there is the constitutional limitation furnished by the Fourth Amendment as to unreasonable searches and seizures. The practical application of the Amendment to the instant case would seem to be that where a taxpayer has duly made his return and paid the tax, and the statutory time limit for further assessment has expired, there should be no further required examination by the Commissioner unless there is prima facie some good reason therefor. The jurisdiction of the court to enforce the summons is expressed in general terms only and is not to be construed as automatically requiring an affirmative order of court in all cases merely upon the request of the Commissioner and irrespective of the existence of probable cause therefor. In the present case there seems to be no reason at all for further examination of the return for 1931, and indeed I do not understand that that is now seriously pressed. But it cannot be said that there is no need for investigation by the Commissioner of the particular transactions referred to between husband and wife in the last days of 1929 or the first few days of 1930. The intimate relationship of husband and wife would seem clearly to justify critical examination by the Government of security transactions between them which are made the basis of substantial tax reductions. Absence of presently existing proof of actual fraud in such transactions ought not to preclude examination to determine whether fraud really existed, because if it did, the limitation is not applicable, and a further tax would be due and payable to the Government. There is nothing essentially oppressive in the examination now sought by the Commissioner. The books and records are in the possession of the administrators and can readily be produced by them. It is not suggested that they have any personal interest in the matter or will be unduly inconvenienced in any way by obeying the summons. Of course it does not follow that the mere existence of sales transactions between husband and wife if further disclosed by the books will of themselves constitute and justify a finding of fraud because it is entirely possible that such transactions, although properly subject to scrutiny, may have been entirely bona fide.

This conclusion—both as to enforcing the Commissioner's right of examination and also the limitation thereon—is consistent with well established principles. The power of the court to enforce the examination in aid of internal revenue taxation has been affirmed and exercised in a number of cases, although it is generally recognized that the court may decline its aid if the examination is plainly oppressive or where the information is not material. Bolich v. Rubel, 67 F.(2d) 894 (C.C.A.2); In re International Corporation Co., 5 F. Supp. 608 (D.C.S.D.N.Y.); Miles v. United Founders Corporation, 5 F.Supp. 413 (D.C.N.J.); United States v. First National Bank (D.C.) 295 F. 142, affirmed 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796; In re Keegan (D.C.S.D.N.Y. March 5, 1937) 18 F.Supp. 746, Prentice-Hall, Tax Service, vol. 1, 1937, par. 1238, pp. 1394, 1395; In re Upham (D.C.S.D.N.Y. March

4, 1937) 18 F.Supp. 737, Prentice-Hall Tax Service, 1937, Par. 1237. See, also, McMann v. Securities Comm., 87 F.(2d) 377, 379 (C.C.A.2); United States v. Murdock, 284 U.S. 141, 148, 52 S.Ct. 63, 64, 76 ·L.Ed. 210, 82 A.L.R. 1376. There are seemingly only a few cases which have dealt with similar situations where the limitation as to the time of an assessment for further taxes has run. But those that I have noted are generally to the effect that after the bar of the statute has completely fallen, so that under no circumstances, whether involving fraud or otherwise, could there be a further assessment, the examination will not be enforced (In re Archer (1878) Fed.Cas.No. 506 (D.C.S.D. N.Y.); Farmers' & Mechanics' National Bank v. United States, 11 F.(2d) 348 (C. C.A.3); and where the existence of fraud only saves the bar against further assessment, there must be some proof or showing of fraud to justify the examination. In the Matter of the Tax Liability of Morris and Cummings Dredging Co. (D.C.N.Y.) 9 A.F.T.R. 1665; Zimmermann v. Wilson, 81 F.(2d) 847 (C.C.A.3). But in the recent Upham and Keegan Cases, supra, the court refused to enjoin the examination of the taxpayer's brokers, where suggested fraud was being investigated. Here we are dealing with a situation where the bar of the statute as to an assessment has not fallen if the taxpayer has been guilty of fraud in making his return, and where the Government has shown what may be fairly stated to be reasonable grounds of suspicion or probable cause for the examination to ascertain if there has been fraud. It follows that the examination proposed for the transactions between the husband and wife in the latter part of 1929 and the early part of 1930 is not unreasonable or oppressive and the defendant administrators should be required to submit thereto.

But no reasonable ground of suspicion of fraud or probable cause with regard thereto has been shown by the Commissioner which would justify enforcement of examination of the taxpayer's books for 1931, as to which one examination has already been made without disclosing the existence of any fraud; and another further examination at this time of the taxpayer's books and records for that year would seem to be unreasonable. The bar of the statute, except in the case of fraud, has fallen and both the taxpayer and his wife are now deceased. In any controversy that might hereafter arise the beneficiaries of the taxpayer's estate would be deprived of the benefit of the testimony of the husband and wife, which has occurred during the Commissioner's delay; and, what is possibly more important, there is no showing of fraud or of any reasonable suspicion therefor for that year. If now permissible for 1931 it would seemingly be equally permissible to enforce an examination of the taxpayer's personal papers and financial records for any or all of the years that the income statutes have been in force, except as to the years where time is an absolute bar, without any assigned reason therefor. Of course it should be said, counsel for the Commissioner do not assert or urge the existence of such a broad investigatory power.

█ In my opinion the great principle of the Fourth Amendment can properly here be invoked by the representatives of the taxpayer. It is true that the procedure sought, testimony under oath with reference to the books and records, is not literally a search and seizure proscribed by the Fourth Amendment but, as pointed out in the memorable opinion of Mr. Justice Bradley in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, the history of the conditions from which the Amendment emerged shows that its principle transcends its mere literal expression. It is just as incumbent upon the courts now as in the past to vigilantly protect the citizen against unreasonable and oppressive inquisitorial investigations instituted and conducted without probable cause. Jones v. Securities Comm., 298 U.S. 1, 26, 56 S.Ct. 654, 662, 80 L.Ed. 1015. And it has recently been held in the Third Circuit that the Fourth Amendment is a protection to the individual taxpayer against cumulative investigations of his books and records in a situation similar to the instant case, so far as the year 1931 is concerned. Zimmermann v. Wilson (C.C.A.) 81 F.(2d) 847. It is said for the Commissioner that the Fourth Amendment is applicable only to criminal prosecutions, which this case is not. Of course there are particular situations in civil cases where the amendment is not properly applicable [for instance, see Camden County Beverage Co. v. Blair (D. C.) 46 F.(2d) 648; Id. (C.C.A.) 46 F.(2d) 655; Den ex dem. Murray v. Hoboken Land Co., 18 How. 272, 285, 15 L.Ed. 372; In re Chin Wah (D.C.) 182 F. 256; Chin Wah v. Colwell (C.C.A.) 187 F. 592], but its protective principle is not limited to pending criminal proceedings. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B,

808

834, Ann.Cas.1915C, 1177; Federal Trade Comm. v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Federal Trade Comm. v. Baltimore Grain Co., 284 F. 886 (D.C.Md.), affirmed 267 U.S. 586, 45 S.Ct. 461, 69 L.Ed. 800; Jones v. Securities Comm., 298 U.S. 1, 26, 56 S.Ct. 654, 662, 80 L.Ed. 1015; Harriman v. Interstate Commerce Commission, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253; Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 50 L.Ed. 652; In re Pacific Railway Comm. (C.C.) 32 F. 241, 250. We are not dealing here with the provisions of the Fifth Amendment against self-incrimination. Although in many particular situations it is closely aligned with the Fourth Amendment, the former has not been here invoked by the defendant administrators. See Internal Rev. Agent v. Sullivan (D.C.) 287 F. 138; United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L. R. 1376.

■■ What has above been said relates particularly to the case of the administrators as distinguished from that of the defendant Evans. He has not sought the protection of the Fourth Amendment and the taxpayer is not entitled to invoke it for himself through the broker. United States v. First National Bank (D.C.) 295 F. 142, affirmed 267 U.S. 576, 45 S.Ct. 231, 69 L. Ed. 796; In re Upham, supra; In re Keegan, supra. Compare (on this point) Zimmermann v. Wilson, 81 F.(2d) 847 (C.C.A. 3) and McMann v. Securities Comm. (C. C.A.) 87 F.(2d) 377, 379. Furthermore the broker has interposed no defense in this case. The Commissioner is, therefore, entitled to make any examination of his books that are material to the subject matter. And indeed I understand that in effect this has already been done.

Counsel may submit the appropriate order in accordance herewith in due course.