## UNITED STATES v. FIRST NAT. BANK OF MOBILE et al.

No. 647.

District Court, S. D. Alabama, Southern Division.

Aug. 23, 1946.

618

Albert J. Tully, U. S. Atty. for the Southern District of Alabama, of Mobile, Ala., for the United States.

Charles C. Hand, and Charles B. Arendall, Jr., (of Smith, Hand & Arendall), all of Mobile, Ala., for respondents.

McDUFFIE, District Judge.

The main issue in this cause is the answer to the following question: Is an agent of the Commissioner of Internal Revenue, acting under Section 3614(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. Int.Rev.Code, § 3614(a), clothed with the authority to examine all the records of a banking institution which relate or pertain to the income tax returns of parties under investigation, when such records contain also the names and financial transactions of other customers of the bank not named in the summons and whose income tax returns are not under investigation?

As to the appropriate method of examination of the records of the bank, the following questions also arise:

(1) In carrying out the purposes of Section 3614(a) of the Internal Revenue Code of 1939, is the agent of the Commissioner of Internal Revenue authorized to see items appearing in a record, book, paper, memorandum, etc., bearing upon the returns under investigation, other than the items in such records carried under the names of the parties under investigation?

(2) Is the official agent of the government, rather than the keeper of the records, authorized and charged with the duty, under said section, to determine what items appearing in the records are related to the tax returns under investigation?

(3) If the name of one or more of the parties under investigation appears on any one or more pages of a record of the bank, is that entire record subject to examination by the tax official of the Government, to ascertain whether or not the names of parties under investigation appear on other pages of said record, and whether there are other items in said record related to the return in question, even though such other items appear under the names of customers of the Bank whose returns are not under investigation?

Section 3614(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. Int.Rev.Code, § 3614(a), reads: "The Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is authorized, by any officer or employee of the Bureau of Internal Revenue, including the field service, designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

Acting under the foregoing statute, on June 19, 1946, an agent of the Commissioner of the Internal Revenue Bureau of the Government, Mr. R. A. Cox, served upon the First National Bank of Mobile, Alabama, a summons ordering the Bank through its proper officials to appear and.

produce at a certain time and place "the following books and papers: Any and all records of whatever nature which pertain to or reflect the issuance of cashier's checks, bills of exchange, certificates of deposit, drafts, or checks on other banks, to and for the firm or to and for any of the individuals listed above, irrespective of whether such records also pertain to similar transactions with other persons or firms, during the years indicated," bearing upon the income tax returns for the years 1940 to 1945, inclusive, of the parties named in the summons, viz., Gulf Coast Tobacco Co. and/or Joseph Mitchell, Rebecca F. Mitchell, Samuel J. Ripps and Anne M. Ripps; and to give testimony in the matter of their tax liability.

The Bank refused to obey the summons; whereupon, on June 20, 1946, the Honorable Albert J. Tully, United States Attorney of this Court, filed a petition, duly verified, seeking an order of this Court directing compliance by the Bank with the summons and granting such other or further relief as the Court deemed appropriate.

The Bank then filed, on June 27, 1946, its verified answer, in which the authority of the Commissioner's agent to issue the summons was denied and the petition was further resisted on the grounds:

(a) That the exercise of the authority sought by the Tax Agent would violate the Fourth Amendment to the Constitution.

(b) That the investigation sought to be made was unnecessary and unreasonable because of the unusual length of time, inconvenience, and expense incident thereto.

(c) That the Bank owed those of its customers whose tax returns were not alleged to be under investigation the duty to resist such an examination of its records as here demanded by the official of the Government, in order to protect the accounts and financial transactions of such customers from a perusal and inspection by the official of the Government, and thereby prevent a breach of the *fiduciary relationship* (italics supplied) existing between the Bank and such customers.

The verified petition of the Government and the answer of the Bank were considered as the evidence in the cause in accordance with a stipulation between the attorneys in the case.

The Bank contends:

(1) That it has many thousands of customers; that its check and draft register during the period 1940–1945, inclusive, contains more than 220,000 items; that during said period its Recordak or photographic records of out-of-town checks include more than 6,000,000 items; that it maintains separate check and ledger accounts with respect to each customer, but that all cashier's checks, bills of exchange, etc., recorded for each day, are *commingled* and contain the records of all such instruments with respect to any and *all customers* transacted on each day; that its photographic or Recordak records are made each day of the out-of-town checks handled by the Bank for its thousands of customers, and such transactions for all customers are included in the same records. (Italics supplied.)

(2) That in all books, records, memoranda, papers, etc., where the transactions of the parties under investigation appear, the Bank is willing to point out and disclose any and all specific items showing transactions of the parties under investigation, but will cover or withhold from the eye of the official of the Government all other items or transactions of its customers who are not under investigation. The Bank further states that the parties under investigation have authorized said Bank and its officials to show to the Internal Revenue agents any and all of their transactions appearing on the records of the Bank, but the Bank is unwilling to have the agents see the records of and transactions by other customers which may appear in the same volumes, books, papers, etc., in which the names of the parties under investigation are to be found.

(3) That the Bank is willing to search its own records, even though much time, effort and expense would be incurred, and select from its records those items which in the *opinion of the Bank's officials* are relevant or pertinent to the income tax returns of the parties under investigation. (Italics supplied.)

(4) That the summons and petition here involved seek to give the tax agent the

right to enter upon a "fishing expedition", which would mean the exercise of authority that is so broad and sweeping as to constitute an unnecessary and unreasonable search of its books, records, papers, etc.; and that no such authority was granted by the Congress in the enactment of Section 3614(a), above quoted

The contention of the Government is as follows:

(1) That while it recognizes a fiduciary relationship between the Bank and its customers, neither the Bank itself nor those customers whose returns are not under investigation can suffer an injury from such an examination, because the agent of the Government is authorized to select from the records of the Bank only such items and accounts as pertain or are related to or connected with the income tax returns under investigation.

(2) That the examining agents are not permitted to disclose, under a heavy penalty of the law, the banking transactions of any customer whose tax return is not under investigation and not related to those returns being investigated.

(3) That the fact the Government official may see accounts in the course of his investigation other than those of the parties named in the summons does not and should not preclude the Government from *making its own search* of the records and having its agent, rather than the Bank officials, determine which records of the Bank or items therein are related to or bear upon the income tax returns under investigation. (Italics supplied.)

(4) That to permit the officers of the Bank to withhold from inspection any of the Bank's records or items therein which they deem unrelated or to be records which the official eye of the Government agent should not peruse, would destroy the very purposes of the section of the Internal Revenue Code above quoted by preventing a full and complete examination of such records, books, papers, etc., of the Bank, demanded in the summons.

(5) That a search for escaped taxes is both necessary and lawful, and while such an investigation as here sought is a "fishing expedition", it is not one that is unreason-

able, unnecessary or unlawful; that a third party (the Bank in this case), the owner and keeper of the records of the business acts and doings of a taxpayer under investigation, cannot claim the protection provided in the Fourth Amendment to the Constitution; that even the private papers, disclosing the business of a citizen, may be examined by the appropriate authorities of the Government for such purposes.

This Court, after much research and a study of the precedents cited by counsel on both sides, cannot agree with the contentions of the Bank and is of the opinion that the position of the Government is sound and in keeping with the intention of the lawmakers in the enactment of Section 3614(a). While no case is cited or to be found which involves facts and issues all identical with those here under consideration, there are cases, some of which are referred to hereafter, in which questions have been passed upon that are similar to the fundamental issues here.

In 1924, a question somewhat similar to the one at issue here, was presented to this Court in the case of United States v. First National Bank of Mobile, D.C., 295 F. 142, in which Judge Robert T. Ervin, now a retired judge of this Court, held, in a well-reasoned opinion, referring to the protection afforded by the Fourth Amendment to the Constitution, that the Bank, through its officers, is required, under the statute here involved, to produce books and records material to the ascertainment of the correctness of the income tax returns of a citizen and customer of the bank, and to give testimony relative thereto. This case was affirmed by the United States Supreme Court in 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796. It has been referred to and quoted in several decisions since that date.

In Brownson v. United States, 32 F.2d 844, 847, Judge Booth, of the Eighth Circuit, quoted from the opinion in the First National Bank case, supra, and, in addition, stated, "* * * that when a duly authorized governmental agency is making an investigation and is authorized to summon witnesses and require the production of books and papers, such authority extends not only to the production of the books and papers of the party or corporation under in-

vestigation, but also to the production of the relevant books and papers of third parties or corporations, all subject, of course, to the limitations and conditions contained in the Fourth and Fifth Amendments to the United States Constitution."

In that case it was held that the superintendent of the office of a telegraph company should produce its records and documents relative to taxpayer's receipt of certain sums of money by wire in an investigation by the Internal Revenue Bureau concerning the liability of such taxpayer.

In Miles v. United Founders Corporation, D.C., 5 F.Supp. 413, the court held that it was the duty of a corporation, where any question arises as to the taxability of transfers or exchanges of stock, to produce its books for examination by the government agent and to disclose the names of all exchanging stockholders so that the question of the income of each may be adjusted and assessed in accordance with the law.

In In re International Corporation Co., Inc., D.C., 5 F.Supp. 608, 612, Judge Knox of the Southern District of New York, whose opinions are regarded throughout the nation as sound and able, held that there was no question of a Constitutional right violated in compelling the production of all the records of a corporation, which was engaged in the business of assisting lawyers in the organization of foreign corporations, wherever such records related to income tax liability, including the names and addresses of all persons for whom corporations were organized; furthermore, that for investigation of income tax returns, the Commissioner through his agents might compel the production of all the records of the corporation, even though these records contained also items of specific transactions which did not relate to the subject matters under investigation.

Judge Knox approved, as a whole, the order requiring the production of all the books, papers, etc., with the exception of the words appearing therein, "and the names of such corporations", holding that the materiality of the names of the corporations had not been demonstrated by the Government; he added, however: "But, in granting this relief, I do not mean that the government may not require the production of books or records in which such information may appear, if it be that such books and records contain *other information* to which the Commissioner is *entitled.* In other words, the company cannot resist producing books of account pertinent to the inquiry upon the ground that they also contain the *names of corporations which petitioner has organized."* (Italics supplied.)

It was also held in that case that if the taxpayer himself were permitted to determine which items in his records are relevant to his income taxes, and if the Government were precluded from seeing those which the taxpayer adjudges to be irrelevant or unrelated, then the payment of such taxes would become a voluntary process on the part of the taxpayer; that such an investigation is not the type of "fishing expedition" as is condemned under the law.

In the case of Cooley v. Bergin et al., D.C., 27 F.2d 930, 932, petition was filed by a depositor, setting forth the summons and asking an injunction restraining the bank from producing or submitting to the agent of the Commissioner its books, papers and records in its possession and under its control until the court determined which of said books, papers and records, if any, the bank should produce in accordance with the terms of the summons. In that case the learned Judge Brewster denied the petition and stated: "The mere fact that the books contain entries of deposits by the petitioner of money of other persons would not, in my opinion, warrant the bank in refusing to give any information whatever. Bankers are frequently summoned to court to give testimony respecting, and to produce records of, their dealings with depositors, and I have never heard it suggested that a bank could refuse to respond to the summons because the books contained immaterial entries. *Nor is the bank permitted to be the sole judge of what is material.* The evidence is produced and the relevancy determined by proper authorities after explanation. No rights of the depositor can be said to be invaded by such a proceeding, even if the result is to disclose transactions that have no bearing upon the matters in issue.". (Italics supplied.)

After quoting from United States v. First National Bank of Mobile, supra, Judge Brewster continued:

"In the case at bar any entry on the books of the bank that does not show income, or does not relate to 'matter required to be included in the return' of the petitioner, can be explained and excluded, without working any substantial injury to any one.

"A national bank is a public institution, receiving a valuable franchise from the government, and it should recognize an obligation to aid the federal authorities in the administration of its laws, so far as it is compatible with its duty to its customers."

While the setting or facts in the case of Cooley v. Bergin are different from the case at bar, in that the bank in that case offered no objection to compliance with the summons, and the action was brought by a depositor, and here the situation is the reverse in that the Bank is resisting the production of its records, there is a similarity in the principles and issues determined by Judge Brewster in his reference to the duty of a national bank to cooperate with an agency of the Government, and to the examination of records which contain entries that are immaterial to the subject matter under investigation.

Counsel for the Bank cites with considerable force the case of Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786, wherein it was held that the Trade Commission, acting under a Senate Resolution and the Commission's interpretation of a federal statute, sought to enter upon a "fishing expedition" such as is condemned under the Fourth Amendment; that it was unreasonable to permit the Trade Commission to enter upon an examination of all the books and papers of a corporation on a *possibility* (italics supplied) that such records might disclose evidence of criminal acts on the part of the corporation.

In reviewing the opinion of Mr. Justice Holmes in the Tobacco Co., case, it should be noted that in the following year the Supreme Court approved United States v. First National Bank of Mobile, supra, which held that the keeper of records bearing upon income tax returns must produce such records for examination and appear to testify relative to items of such records bearing upon the returns under investigation. And in 1942, the question of the extent, necessity and propriety of examining records of a manufacturer under the Walsh-Healey Act was passed upon in the case of Endicott Johnson Corp. et al. v. Perkins, Secretary of Labor, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, in which the authority to compel the production of records and to make the examination was sustained over objections similar to those presented in the American Tobacco Co. case. The American Tobacco Co. case was one of the cases relied on by the manufacturer in his objection to the examination.

This Court cannot agree that the decision on the facts and conditions under which the petition was filed in the Tobacco Co. case is determinative of the issues here involved. Here, the Bank itself is not being investigated upon the possibility of discovering a wrongful act of the Bank, as was the respondent in the Tobacco Co. case; it is not called upon to produce evidence which might be self-incriminating, but is simply called as a witness to produce its records and testify as to the business of its customers which relates to the income tax returns under investigation.

The Bank relies strongly upon the case of Martin v. Chandis Securities Co. et al., 9 Cir., 128 F.2d 731. In that case, from the facts quoted in the opinion, the examination was held to be unnecessary, and indeed it was, under Section 3631 of the Internal Revenue Code of 1939, 26 U.S.C.A. Int.Rev. Code, § 3631, which provides as follows: "No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

The petition, filed in March 1940, alleged that an income tax return for the year 1930 was under investigation, and that respondents had under their control certain records bearing upon the matters required to be in-

cluded in the return. The respondents properly contended that the time for further assessment of taxes for the year 1930 had long expired, unless the return was false or fraudulent; that the examination was unnecessary and violative of the above-quoted statute; and that all records requested had *theretofore been examined* (italics supplied) by the Commissioner's agents in connection with the so-called "interest income" then under examination. The court held that no satisfactory proof of fraud was shown, and that the tax inquired about had long been assessed after previous investigations. This Court is of the opinion that the facts in that case present a situation very different from the one now being considered.

Reference was made to Pacific Mills v. Keneflick, 1 Cir., 99 F.2d 188, wherein the facts showed that more than ten years had expired after a thorough and complete examination of the books of the company by a tax agent, whose report covered seventy pages after two-and-a-half months' search. No contention was made that the report or examination was inadequate or erroneous, and it was agreed that the time for any further assessment of taxes for the years 1918–1919 had long gone by; that all refunds had been finally rejected, and in reality there was no question open between the Commissioner and the Pacific Mills relating to the assessment or refund of taxes for the years in question, and no fraud was charged. Even in that case the court said it was not impressed with the suggestion that the examination was so unreasonable as to constitute a violation of the Fourth Amendment, but it was in violation of the statute designed to protect the taxpayer from unnecessary examinations, investigations or harassment. The Pacific Mills case was in effect an effort to obtain evidence in the defense of a suit against a Mr. Nichols, a former Collector of taxes, for an alleged overpayment for the years involved. Certainly it cannot be contended that the Pacific Mills case is similar to the one at bar.

All recognize it is incumbent upon courts, as suggested by Judge Chesnut in In re Andrews' Tax Liability, D.C., 18 F.Supp. 804, 807, now, as in the past, "to vigilantly protect the citizen against unreasonable and oppressive inquisitorial investigations instituted and conducted without probable cause," as held in Jones v. Securities and Exchange Commission, 298 U.S. 1, 26, 56 S.Ct. 654, 662, 80 L.Ed. 1015. The facts showed, in the Andrews' Tax case, that such an investigation as there sought would involve harassment for the taxpayer, and repeated investigations which are and should be condemned. No one of the above questions is involved in the case now before this Court, and nowhere has it been found that the Fourth Amendment protects the owner and keeper of the records of a taxpayer's business transactions, or that the taxpayer may invoke the Fourth Amendment on behalf of a third party, the keeper of his records.

With brief reference to In re Keegan, D.C., 18 F.Supp. 746, there it was held, in refusing to vacate an order theretofore issued directing Keegan to appear and testify about certain records and transactions relating to customers' tax liability, that there was no ground for a claim of violation of the Fourth Amendment; that if the investigation was a "fishing expedition", it was none the less an examination the revenue officers were entitled to make; and that while no fraud was charged or proved, the examination would determine whether or not there was fraud, and such examination was proper.

In Re Upham's Income Tax, D.C., 18 F.Supp. 737, Judge Patterson refused to vacate summonses similar to the order in the Keegan case, holding that unreasonableness was not shown and that if tax returns were not properly checked, tax-paying would become voluntary.

In Bolich v. Rubel, 67 F.2d 894, the United States Court of Appeals, Second Circuit, affirmed the District Court's order directing the production by Rubel, the president of several corporations, of the books of those corporations for examination, holding that no constitutional question was involved; that even though the respondent claimed the Commissioner had already once examined the books thoroughly, the order was proper.

Without further comment on or reference to any other cases cited by petitioner and respondent, none of which can be relied on as a guide or fixed rule or as determinative of the issues in the case at bar, consideration is now given, as set forth below, to the contention of the respondent Bank with reference to the reasonableness of the procedure of the agent of the Tax Commissioner, and more especially the contention that there is a duty resting on the Bank here to resist the summons and petition because of a fiduciary relationship with its customers.

The respondent does not deny the authority of the Government official to examine records under the statute here involved; but it objects to the method adopted and to the form and substance of the summons served upon it, because thereunder the Bank claims the agent examiner, in those records containing items relative to the tax returns under investigation, may see unrelated items not called for in the summons and petition, and the examiner is not authorized to see such unrelated items which are, or may be, commingled in such records with items specifically demanded.

■ It would seem unnecessary to note that the very purpose of the examination is to see all of the records to determine which items in any record, book, paper, etc., are related to the tax returns in question. Likewise it is unnecessary to repeat that no constitutional question, as claimed by the respondent, is involved in this cause.

Nearly a generation ago, our lawmakers realized the necessity, in carrying out the law imposing a tax on incomes, of providing for an examination of the records of the taxpayer's business transactions or sources of income, kept by himself or by a third party. When they authorized the Commissioner of Internal Revenue or his agent, "to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return" under investigation, they intended a full and complete investigation of such books, records, etc., and not an examination partially or partly made. If the official of the Government is not permitted to examine a record in its entirety, he could not properly perform the duty imposed upon him.

■ To produce or submit for examination only a part of the record and withhold the remaining part or parts, as the respondent in this case offered to do, is not such a production or submission of the records for examination as contemplated in Section 3614(a). The suggestion of the First National Bank, therefore, that in its records, and especially in those containing commingled accounts, it should be permitted to disclose some items but withhold others, is untenable.

■ All agree that a bank should protect its business records from the prying eyes of the public, moved by curiosity or malice. No one questions its right to protect its fiduciary relationship with its customers, which, in sound banking practice, as a matter of common knowledge, is done everywhere.

The Congress, realizing that sound business practices demand the proper safeguards for the privacy of business records, and cognizant of the possible abuse even of investigatory authority, has endeavored to give protection by a statute which, in an administrative procedure of this kind, prohibits any agent of the Government from divulging or publishing "in any manner whatever not provided by law" the amounts or sources of income, shown in any tax return. A violation of his duty in this respect would subject the agent to criminal prosecution, with a maximum penalty of a $1,000 fine, twelve months' imprisonment, and dismissal from the service. See Section 55(f) (1), Internal Revenue Code 1939, 26 U.S.C.A. Int.Rev.Code, § 55(f) (1). Moreover, many years ago, Congress, mindful of the convenience and rights of citizens who pay income taxes, in an effort to be fair and just with the taxpayer, enacted Section 3631 (referred to and quoted, supra, in Martin v. Chandis Securities Co.) designed to prevent harassing, cumulative, and unnecessary examinations of the records of a taxpayer's business. There are involved in this case, however, no such rights of the respondent or any of its customers as are sought to be protected in Section 3631.

Regardless of our innate prejudices against any curious or snooping eye, including that of any government official who might abuse his authority, we must recognize that the payment of taxes is not regarded as, nor is it, a voluntary act, but a duty which must oftentimes be compelled for the public welfare. We must likewise recognize the difference between the snooping or curious eye of the general public, and the official eye of the agents of the Government, especially when such agents cannot, acting within the law, abuse their authority, and are presumed to do their duty.

No one has ever objected to regular or periodical examination of banks by bank examiners, both state and national, authorized by law to investigate or examine the business of banks and their financial stability. Such agents of the government without question may see each and every item of every record in a bank. Likewise here, under Section 3614(a), we have another official examiner or agent of the Government clothed with the authority and charged with the duty to inspect the records of a bank or of any other keeper of records, for the purpose of ascertaining the correctness of income tax returns. While the agent in this case represents the tax examiner, both the bank examiner and the revenue agent are performing a public function. The welfare of the public doing business with the bank, as well as the bank itself, is involved in one examination, while the necessary function of providing revenue for the Government is involved in the other. In both instances the public is being served.

It is the duty of every citizen to furnish, when called upon, evidence relative to a default of any other citizen in his civic responsibilities and his evasion or violation of the law. It is the duty of a national bank, privileged and chartered by its Government to do business with the public, certainly no less than the duty of any other keeper of records, a corporation or a private citizen, to cooperate with the agents of its Government, when called upon as a witness to produce any and all of its records of the financial transactions of its customers which relate or pertain to the income tax returns under investigation. A protec-

tion of a fiduciary relationship, claimed by the Bank in this case, can in nowise obviate such a duty.

There is nothing so sacrosanct or privileged about the records of a bank's transactions with its depositors, with whom there is a relationship of debtor and creditor, or about a fiduciary relationship with its customers, as to preclude agents of the revenue department from seeing those records for the purpose of determining what items therein relate to or are connected with the tax returns under investigation, even though such records may contain items immaterial to the returns being investigated.

Assuming the officials of a bank or keepers of records are willing, as suggested here, on their own time and at their own expense, to point out one or more items of the record known to be related to the tax return under investigation, but are permitted to cover up or withhold from the Government official any or all other items, the bank officials or keepers of records would then become the examiners of their own records and *adjudge or determine for themselves* whether or not any of the other items or names in the same volume or record are related to or bear upon the tax returns under investigation. Clearly this would not be such an examination of records as contemplated by our lawmakers.

Had Congress intended that such an examination by the keeper of records would suffice, it would have provided for the acceptance of a certificate by the keeper of the records, setting forth what the records contain, instead of providing an examination of records by an official of the government. If such an examination as the Bank suggests were permitted, it would make possible in many instances an avoidance of the painful process of paying taxes; it would empower the keeper of records, if he so desired, by *withholding from investigation the items he himself deemed irrelevant,* not only to shield or protect a delinquent taxpayer, but he could also obstruct the administration of justice, in case of fraud in a tax return growing out of collusion or conspiracy to evade the law, between the party under investigation and any one or more citizens or customers, when or wherever their

business transactions appear in the same records. Indeed, he could avoid any penalty for himself should he be a party to such unlawful evasion of taxes.

There is no presumption here that the officials of the respondent have deliberately refused, or would refuse, with any ulterior motive, to cooperate with the agents of the Government, and no suggestion to the contrary is, or has been, made. It must be realized, however, that all keepers of a taxpayer's records are subject alike to the Act of Congress here involved, and the law has drawn no line between taxpayers and those keepers of their business records who act in good faith, and those who fail to do so.

It cannot be assumed in the investigation sought here that the officials of the Government will abuse their authority in carrying out the order of the Court, which is to examine the books, papers, etc., of the Bank, related to or connected with the returns under investigation, and take therefrom only those names or specific items which are related to the income tax returns of the parties named in the summons.

It is impossible for this Court to see how any customer of the Bank not named in the summons can suffer an injury, or how the Bank, not itself under investigation, can be in the slightest danger of a material injury of any kind, or how any fiduciary relationship between the Bank and its customers can be disturbed by a compliance with the order of the Court in this case.

The Court answers the questions it initially propounded in the affirmative, and holds:

(1) That no Constitutional right of the Bank is involved in this cause.

(2) That the examination sought here is not such a "fishing expedition" as is condemned under the law.

(3) That the examination sought in the petition of the United States Attorney is not unreasonable and not unnecessary, but is a proper and lawful function of the Commissioner of Internal Revenue.

An appropriate order has been entered.