UNITED STATES ex rel. SATHRE v. THIRD NORTHWESTERN NAT. BANK.

Civ. 3875.

United States District Court
D. Minnesota, Fourth Division.

Feb. 8, 1952.

C. U. Landrum, U. S. Atty., Howard H. Gelb, Asst. U. S. Atty., and Carl R. Perkins, Special Atty., U. S. Treasury Department, all of St. Paul, Minn., for complainant.

Grant W. Anderson, of Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

On or about September 4, 1951, Charles J. Sathre, an acting Special Agent of Intelligence Unit, Bureau of Internal Revenue, served upon the defendant bank a summons which required defendant to appear before Sathre on a specified date and to give testimony in the matter of the tax liability of one Sidney L. Brennan and one Florence Brennan, his wife, and to bring the following books and papers: "All records of cashier's checks, bank money orders and certificates of deposit purchased by, endorsed by, or paid to or for Sidney L. Brennan, and his wife Florence Brennan, and Louise Brennan, Sally Brennan, Irene Brennan, William Werner, Jr., Vernon Wahl, Beatrice Wahl, Earl J. C. Smith, Jr., sometimes known as Earl Smith, Stanley Saladis, Anthony Ficocello, Gil Ewer and Tony K. Manthis, together with any and all such paid, cashed, or honored cashier's checks, bank money orders and certificates of deposit and supporting documents and records now in your possession or custody. *See attached note.*" The attached note contained an offer that the agent would check the records himself if the bank so desired. The bank refused, and failed to obey the summons, and the agent now seeks an order from this court compelling the bank to appear before Sathre, testify and produce the books and papers requested by the summons.

Sections 3615, 3633, and 3800 of the Internal Revenue Code, 26 U.S.C.A. §§ 3615, 3633, 3800, grant this court authority to require compliance with summonses issued by the Internal Revenue Bureau if the summons is a valid one. Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731, 734. The instant summons was issued by Sathre pursuant to Section 3614 of the Internal Revenue Code, 26 U.S.C.A. § 3614. It provides that the Commissioner of Internal Revenue or an employee designated by him may examine any books, papers, records, or memorandum bearing upon matters required to be included in a taxpayer's return and may require any person having knowledge concerning the taxpayer's transactions to appear and give testimony concerning matters which should be included in the tax return. This statute has been applied many times to books of persons other than the taxpayer whose return is under investigation. And papers of the kind which Sathre seeks here were recognized to be within the statute in United States v. First Nat. Bank of Mobile, D.C., 67 F.Supp. 616, affirmed, with modification, 5 Cir., 160 F.2d 532. Certainly, the literal words of the statute include such papers. And those words must be interpreted liberally to fulfill the purpose for which the statute was enacted. Stone v. Frandle, D.C., 89 F.Supp. 222. They are not privileged papers. McMann v. Securities and Exchange Comm., 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445; In re Upham's Income Tax, D.C., 18 F.Supp. 737. The summons here also identified with sufficient particularity the papers and books desired. Compare United States v. First Nat. Bank of Mobile, supra. And the Government need not establish that the taxpayer was guilty of fraud in his tax return in order to establish its right to inspect records of the kind sought here under the statute. Zimmermann v. Wilson, 3 Cir., 105 F.2d 583; Miles v. United Founders Corp., D.C., 5 F.Supp. 413; In re Andrews' Tax Liability, D.C., 18 F.Supp. 804. The purpose of seeking the information is to determine if fraud does exist, not to obtain records for what the Government already knows. The bank's objection that the Government is "fishing" is not completely sound. The very purpose of the investigation and that statute suggests and requires that the Government be permitted to indulge in some "fishing". In re Keegan, D.C., 18 F.Supp. 746.

But, of course, as the bank soundly points out, the "fishing" cannot amount to an inquisition or arbitrary inquiry on the part of the tax investigators. A reasonable basis for making the inquiry must exist. McMann v. Securities and Exchange Comm., 2 Cir., 87 F.2d 377, 109 A.L.R. 1445; Stone v. Frandle, D.C., 89 F.Supp. 222. Whether the inquiry is reasonable, and therefore justifiable "fishing", must be determined from all the facts of each case, including the end for which the information is sought. But proof and prevention of tax frauds—the end sought by the investigation and so earnestly emphasized by the Government—cannot be the only factor considered. In re Andrews' Tax Liability, D.C., 18 F.Supp. 804, 806. For the cases recognizing that harassment cannot be practiced by the Bureau in their investigations are based necessarily upon the hypothesis that the investigation cannot be an unreasonable burden, at least upon the third persons whose books, etc., are requested by the agents. See In re Keegan, supra; Stone v. Frandle, supra. That hypothesis applies also to situations like the instant one, which resolves itself into the question of whether the Government's request is a reasonable one in view of the record before the court. The test has been referred to in terms of whether the facts show a reasonable ground of suspicion or probable cause for the examination to ascertain if there has been fraud. In re Andrews' Tax Liability, D.C., 18 F.Supp. 804, 807; Martin v. Chandis Securities Co., D.C., 33 F.Supp. 478, 480.

The evidence here shows that neither the Brennans nor any of the other persons named in the summons had had bank accounts of any kind with the defendant during the time in question. The only transaction that Brennan had with the bank during the period in question was a loan on his car. Information concerning the loan dealings has been given to the Government by the bank under a previous summons. The agent requests the information stated in this summons as to the other named persons upon the theory that Brennan may have used their names in his dealings as aliases, or that they may have acted as Brennan's agents or nominees in banking transactions. But the evidence does not furnish a basis upon which such a suspicion might be justified. Anthony Ficocello was the only one of the other persons named in the summons who had any dealings with the bank. He, like Brennan, had a car loan. And nothing in this record shows that Brennan may have been related to that loan. Moreover, the evidence is that none of the other persons named in the summons was a customer of the bank in any manner during the period in question.

The Government bases its case primarily upon the theory that the agent's experience in other cases has indicated to him that when the persons have had one transaction with a bank, they may have had more with other persons through that same bank. So the Government suspects that because Brennan had a loan from this bank on his car, he had other business dealings through the bank with other persons by way of cashier's checks, money orders, etc. But the Government has failed to show any facts to support that conclusion.

The testimony shows that in order to satisfy the summons for the period which the Government seeks to check, the defendant bank would be required to examine the face and back of 58,577 items in addition to the endorsements thereon. It would also be required to examine 5,697 duplicates of the cashier's checks in order to ascertain the name of the purchaser. A requisition also exists for each of these 58,577 items. And, in addition, supporting documents such as ledger sheets, deposit slips, clearings records, cash sheets, etc., exist for all of the items. To satisfy the Government's summons, all these papers and records would have to be checked by the bank at its own expense. The papers which the Government seeks are not already segregated from others of similar kind. The cashier's checks, money orders, etc., which the Government requests are commingled with others. Some of the papers, such as the supporting records, might divulge only cumulative facts and might, in the final analysis, not be required by the Government. But just a brief summary indicates

the very substantial job which the bank must perform if it is to obey the summons even in a general way. The agent's offer to make the examination himself would not lessen the burden of the bank. Obviously, the bank should not be required to turn over to the agent all cashier's checks, bank money orders, and certificates of deposit purchased by all customers of the bank during the five-year period in question. See First Nat. Bank of Mobile v. United States, 5 Cir., 160 F.2d 532. The only way in which the bank could comply with the order, according to the evidence, would be to place some three or four bank employees upon the task of searching and examining all the records enumerated, which would reasonably consume three or four days of the employees' exclusive time.

The performance of this substantial job by the bank at the expense of the bank can be made reasonable and within the scope of the statute only if there is some factual indication that there is some likelihood that among some of the thousands of documents which the bank would be required to check will be papers which have a bearing on the tax liability of the taxpayer under investigation. That proof is lacking here. For there is not sufficient proof to establish that by the bank's work any documents may be found which relate to the Brennans. The agent's opinion concerning the possibility of finding something is not binding on the Court. See First Nat. Bank of Mobile v. United States, supra, 160 F.2d at page 535. To disregard this lack of proof, ignore the burden on the bank, and look only to the fact that tax fraud investigations must be given liberal scope would give the Government a blank summons whose limits need be drawn only by the imagination. Such a limitless right and power obviously was not intended by the statute. Martin v. Chandis Securities Co., D.C., 33 F.Supp. 478, 480. That a bank may be compelled in many instances to produce the matter which this bank seeks to withhold upon the theory of unreasonable burden is apparent. But greater proof either of the possibility of finding documents bearing upon the tax liability of the taxpayer or of the small burden upon the bank in proportion to the expected degree of success must be more evident than here. This case comes very close to, if not within, the situation noted by Judge Learned Hand in McMann v. Securities and Exchange Comm., supra, 87 F.2d at page 379, where he said, "No doubt a subpoena may be so onerous as to constitute an unreasonable search. (Citing cases). Even then, the sanction is unobjectionable, unlike a descent upon one's dwelling or the seizure of one's papers; the search is 'unreasonable' only because it is out of proportion to the end sought, as when the person served is required to fetch all his books at once to an exploratory investigation whose purposes and limits can be determined only as it proceeds." Judge Hand held that in the case before him the investigation "was no such 'fishing excursion' ". That is not the situation here. But the hypothetical situation noted by Judge Hand is basically present here.

The Government earnestly points to First Nat. Bank of Mobile v. United States, 5 Cir., 160 F.2d 532, wherein a request similar to the instant one was involved. But the trial court's opinion in that case, 67 F.Supp. 616, shows, at page 619, that the bank in that case consented to furnish the material concerning the taxpayer. The only controversy upon which the Court ruled was whether the bank was required to permit the internal revenue agent to examine papers which did not involve the taxpayer in any manner. The appellate court's opinion held that the bank was not required to grant the Bureau access to money orders, cashier's checks, etc., of other persons because such money orders, etc., had no bearing upon the tax liability of the taxpayer under investigation. Neither the trial court nor the appellate court determined in the Mobile bank case the controversy now before this court in this case. The cases cited by the Government concerning the nature of the inquiry and the inapplicability of the Fourth Amendment may be in point for the general principles cited and the facts to which they were applied in the cited cases. But they do not require a granting of plaintiff's petition on the facts and issues before this court.

884

In view of these premises, therefore, the order sought by the Government must be, and hereby is, denied, without prejudice, however, to a new petition and proper showing should such a proper showing be possible at a later date.

An exception is reserved.